THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES HALL, A. CUYLER TEN EYCK, JACOB LEONARD and Others, v. EDWARD A. MAHER, JOHN BOWE, CHARLES A. HILLS, THOMAS POWERS and HORACE ANDREWS, THE BOARD OF CONTRACT AND APPORTIONMENT OF THE CITY OF ALBANY, and THOMAS J. LANAHAN, the Clerk of said Board.

*City charter, requiring the city to keep its pavements in repair — validity of a contract which provides, in addition to the work of laying the pavement, that the contractor shall repair it; for the cost of all of which the assessment is to be levied upon property benefited.*

By the charter of the city of Albany it is directed that "ordinary repairing * * * of all streets now paved, or that may be hereafter paved, with granite blocks, * * * shall be charged upon said city;" and, by chapter 319

of the Laws of 1888, the provisions of said act as to ordinary repairs to granite block, or other kind of square-stone pavement, are made applicable to Trinidad asphalt pavement, if laid in Delaware avenue under the provision of such act of 1888.

An ordinance, passed by the common council of the city, providing for the pavement of Delaware avenue with Trinidad asphalt, contained a provision requiring the contractor to agree "to keep the said pavement in repair for seven years, from and after its acceptance by the city, without expense to said city or abutting property owners," which provision was inserted in the specification under which bids were received for the work, pursuant to which a contract was made.

*Held,* that the necessary effect of this contract was to charge upon the property owners the cost of keeping the avenue in repair for seven years, in violation of the provision of the act of the legislature which charged such expense upon the city at large.

That anything in the contract which imposed upon the property owners more than the obligation of having the pavement well constructed in the outset was unjust to them.

That the contract was illegal and should be vacated.

Cᴇʀᴛɪᴏʀᴀʀɪ to the Board of Contract and Apportionment of the city of Albany to review a decision of that board, made September 27, 1889, upon a hearing had upon written objections, duly filed with the said board, to the letting of a contract to the National Vulcanite Company for the grading and paving of Delaware avenue, in said city, with Trinidad sheet asphalt.

The proceedings before the Board of Contract and Apportionment were instituted pursuant to section 4 of title 11 of the city charter, added thereto by section 12 of chapter 242 of the Laws of 1887.

The contract was objected to because of the fact that it contained a provision which required the contracter to keep in repair the pavement, laid in pursuance of the provision thereof, for the period of seven years, from and after its acceptance by the city, without expense to said city or to the abutting property owners.

*P. E. Du Bois,* for the relators.

*Albert Hessberg,* for the contractors.

*D. Cady Herrick,* corporation counsel.

Lᴇᴀʀɴᴇᴅ, P. J. :

Chapter 319, Laws of 1888, section 5, provides : " The provisions of the charter of the city of Albany as to ordinary repairs to granite block or other kind of square stone pavement shall apply to the

Trinidad asphalt pavement if selected by the property owners to be laid on Delaware avenue." Whether or not this section is a violation of article 3, section 17 of the Constitution, is a question which has not been raised before us, and we, therefore, do not decide it. (*People ex rel. N. Y. Electric Lines Co.* v. *Squire*, 107 N. Y., 602.) And we shall assume the constitutionality of this provision.

The provisions of the charter thus made applicable (chapter 298, Laws of 1883, title 10, section 3), declare that "the repairing of the carriage-way of all streets now paved or that may be hereafter paved with granite blocks or other kind of square stone pavement * * * shall be charged upon said city." In this respect streets thus paved differ from those paved with cobble-stone. The repairs of the latter are paid by adjacent owners. Thus the adjacent owners who have caused their street to be paved with granite block (or, in this case, Trinidad asphalt) are thereafter relieved from the expense of repairing. The cost of paving with granite block (and Trinidad asphalt in this case) is assessed upon adjacent owners, although they are allowed in certain cases (of which this is one) some years in which to pay, the city assuming the burden meantime. These adjacent owners have, therefore, a direct interest that the cost of such paving shall be as low as possible, consistent with good work.

Under a petition for the pavement of Delaware avenue, authorized by the law first cited, the common council passed an ordinance for such paving. This directed the Board of Contract and Apportionment to require the contractor to agree "to keep the said pavement in repair for seven years from and after its acceptance by the city without expense to said city or abutting property owners." Under this ordinance specifications were prepared containing, among other things, a clause to that effect. A proposal for the work was made and the accompanying bond bound the proposer to the same effect. The contract was awarded to the proposer, and the written contract refers to the specifications and the ordinance. Hence the contractor is bound, according to the terms of the contract, to keep the pavement in repair for seven years after its acceptance.

The relators objected before the Board of Contract and Apportionment, among other things, that the necessary effect of this contract was to charge upon the property owners the cost of keeping the avenue in repair for seven years, when such expense is only charge-

able on the city. The board overruled the objection, and the question now comes before us by *certiorari* for review under section 4, title 11 of the charter, as amended by chapter 242, Laws of 1887.

The contractor, who alone appears here to sustain the award, urges that the proof shows that the bid did not include any item for repairs, and, therefore, the property owners are not injured. One of the officers of the contracting company said that he calculated that the pavement would last the time required, and, therefore, did not estimate anything for repairs. But that is not conclusive on this question. Other bidders may have thought it necessary to make their prices higher, for the reason that they would be required to keep the work in repair for seven years; and if no such requirement had been inserted, such other bidders might have made a proposal lower than this contractor, then the property owners would have had less to pay, and for the ensuing years the city would have done the repairs.

It is further urged that the relators have another remedy, viz., to apply for a reduction of the assessment to be levied if an illegal item should be therein. But the remarks just made show that this, if any remedy at all, is not sufficient, because it cannot be held that lower bids might not have been made if the specification had not contained the item now objected to.

A further argument is made, viz., that since 1883 every contract of paving has required the contractor to keep the pavement in repair for a year. But this may reasonably be considered a time within which to test the pavement. Defects in the construction may not appear immediately, and this time of one year may be proper, in order that any such defects may become apparent. By the present contract five per cent of the price is to be retained for not more than one year as a guaranty that the work will be kept in good condition. It is evident that a provision of this kind is different from an agreement that the contractor will keep the road in repair for seven years. It is not subject to the objection made by the relator, being, in substance, only a security for the thorough completion of the work, and unobjectionable, so far as we can now see.

It is also urged by the contractor that the provision in the charter above referred to, uses the words " ordinary repairing," while the

ordinance in question has the words " keep in repair," and the contractor urges that a fuller statement in the specification shows that the agreement does not refer to ordinary repairs.   But we cannot accept this construction.   The words " unexpected degradations," " badly executed work," etc., in the specifications do not take away the effect of the previous words " kept in good condition and repair." These words certainly include the duty of making ordinary repairs.

It is urged with some force that this agreement is only equivalent to a warranty that the pavement will last seven years without repair, and that such a warranty would be a benefit to all interested in the work.   Undoubtedly, such a warranty would be a benefit, as this very provision may be.   But the difficulty arises from the circumstance that the property owners are to pay only for the paving, and the city is to pay for subsequent repairs.   Anything, therefore, which throws on the property owners more than the burden of having the pavement well constructed in the outset is unjust to them.

We can see this by extending the time provided for.   Let us suppose that the contract was to keep the pavement in repair for 100 years, or perpetually.   Is there any doubt that by such a contract the property owners would be required to pay a higher price than the mere cost of the paving thoroughly done ?

It must be noticed that this is not an action to vacate an assessment which has been laid, as were some cases cited by the counsel for the contractor.   This is a proceeding to review the action of the board in letting the contract.   And the matter stands simply thus : It is the duty of the city to make the repairs.   But by this contract they make the property owners liable to pay, not only for the laying of the pavement, but for the making repairs for seven years. And every person who was to bid for the contract was obliged to · agree to these terms.   The city, therefore, compels the property owners to pay the contract-price, not only for laying the pavement, but for the seven years' repairs.   This it has no right to do.   And it cannot make such a proceeding valid by testimony that the contractor did not include a charge for repairs in his bid.   If, as the contractor claims, no repairs will be needed, then there was no need of such a clause.   Evidently the city thought repairs might be needed, and arranged that the property owners should pay therefor in advance.   They have a right to insist that the specifications for

which proposals are to be made, and the contract entered into thereon, shall be limited to that work which they are bound to pay, viz., the construction of the proposed work as distinguished from subsequent repairs.

The decision of the board must be reversed and the contract adjudged illegal, with fifty dollars costs and disbursements.

MAYHAM, J., concurred.

Decision of the Board of Contract reversed and contract adjudged illegal, with fifty dollars costs and printing disbursements.