## THE CITY OF SCHENECTADY, RESPONDENT, *v.* THE TRUSTEES OF UNION COLLEGE, APPELLANT.

*Municipal corporations — asphalt pavement — assessment at street intersections — due process of law — work done by another corporation for a city — stipulation by a paving compar*   *⁺o repair.*

The trustees of Union College owned land in the city of Schenectady, through which were laid out Union avenue and Gillespie street, and dedicated them to the public, and the dedication was accepted. These streets extended from the north to Union street, which ran east and west. The trustees also owned lots, one on the corner of Union avenue and Union street and one on the corner of Gillespie street and Union street.

The city, having paved Union street with asphalt pavement, assessed against the defendant a part of the expense for the work done on Union street in front of Union avenue and Gillespie street; the expense for one of these spaces constituting half the width of Union avenue, where it intersected Union street, and for the other constituting one-half of Gillespie street, where it intersected Union street.

Thereafter the city brought an action to recover of the trustees the cost of the pavement of the two pieces of land lying at the street intersections, under the provisions of the charter, which provided that where the city was forced to do the work the street superintendent should keep an account of the cost, and should return this to the common council, whose audit thereof should be final and conclusive; and further, that the city was authorized to sue for this amount, and that the account duly certified should be "sufficient presumptive evidence" to entitle the city to recover.

*Held*, that if the charter had stopped at the words providing that the audit of the common council should be "final and conclusive," it would have been open to the criticism that no hearing was given the taxpayer; but that the further statement that the account should be "sufficient presumptive evidence," left the

taxpayer the power to overcome that presumption, and if beaten upon this issue upon a trial he could not then claim that his property had been taken without due process of law.

That where the charter gave a city power to pave streets, it might pave with asphalt or in any other substantial manner.

Where paving was done by the city, it was required by the charter to be done by or under the direction of the superintendent of streets.

*Held*, that if done under his direction the actual work might be done by an asphalt pavement company.

The asphalt company agreed to do the work in such a substantial manner that no repairs should be required for five years after its completion, and that in case any repairs became necessary during that time the company would make them without charge.

*Held*, that this amounted only to a guaranty of the quality of the work, and was not an independent obligation.

*People ex rel. Hall* v. *Maher* (56 Hun, 81) distinguished.

That the spaces at the street intersections were properly assessed against the trustees as they owned them, being the owners of the lots behind these spaces, and having, by dedication, parted only with the title to the middle of the street, for the purposes of the public easement.

(HERRICK, J., dissenting.)

APPEAL by the defendant, the Trustees of Union College, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Schenectady on the 8th day of March, 1892, upon a recovery by the plaintiff, after a trial before a referee.

The action was brought to recover the cost of paving with asphalt a part of a street in the city of Schenectady, known as Union street, which ran in an easterly and westerly direction, and was intersected by Union avenue and Gillespie street from the north.

· *R. J. Landon*, for the appellant.

. *A. P. Strong*, for the respondent.

MAYHAM, P. J.:

The case shows that the defendant originally owned the land in Schenectady, which now constitutes Union avenue and Gillespie street in that city, and dedicated the same to the public, and the plaintiff accepted such dedication and adopted said land as public streets.

After such dedication and adoption, Union street was paved by the plaintiff, with asphalt, and a portion of the expense of the pavement was assessed, by the common council of the plaintiff, for the two lots, of which the half of Union avenue was one, and the half

of Gillespie street was the other, in the same manner as if they were private property, and the question upon this appeal brings up for review the validity of that assessment.

This work of paving these streets was done by contract, pursuant to a resolution of the common council of the plaintiff, and the superintendent of streets certified the amount of costs and expenses of this improvement, as to each of the defendant's intersecting street lots, for this work done in front of them respectively, at the rate of the sum fixed in the contract, and paid by the plaintiff to the contractor or for making such improvement. The city paid the contractor, and the common council, by resolution, directed the city attorney to prosecute, in the name of the city, for the sum or assessment not paid by the defendant at a given date.

The defendant failed to pay the amounts audited by the common council, as the same were certified by the superintendent of streets, at the time fixed; this action was commenced, and from the judgment recovered by the plaintiff in this action the defendant appeals.

The appellant objects that, in levying this tax or assessment upon the property of the defendant, no opportunity was given it for a hearing before any board or officer, and insists that the enforcement of the same, by judgment, tends to deprive the defendant of its property without due process of law, and in that respect violates the Constitution, and that the assessment was, therefore, void.

The proceedings of the city government which led up to the making of this improvement do not seem to be in controversy on this appeal; so that we may start our investigation with the proceedings of the common council in levying or assessing, and enforcing this tax.

The plaintiff, in fixing the liability of the defendant, and in the enforcement of the same, assumes to proceed under the provisions of section 48 of title 7 of chapter 62, Laws of 1873, amending the charter of the city of Schenectady (chap. 385, Laws of 1862), that section provides as follows:

"If the owner or occupant of any lot or building affected by any such ordinance shall fail to comply with the requirements thereof, the common council shall cause the same to be done by or under the direction of the said superintendent for and at the cost and expense of such owner or occupant.

"The said superintendent shall keep an account of such cost and expense, which shall include the cost of survey, and shall certify to the correctness of the same and return it to the common council within thirty days after the completion of the work.

"The common council shall audit and allow such account at such sum as it shall deem proper, and which shall be final and conclusive; and it shall be lawful for said city to sue for and recover from such owner or occupant, or his legal representatives, the sum so audited and allowed, with interest at the rate of one per cent per month from the time of the audit and allowance of such account, in an action for money paid and expended for such owner or occupant by the said city; and the said account, with the certificate of the city clerk thereon, of the amount so audited and allowed thereon, shall be sufficient presumptive evidence to entitle the plaintiff to recover in such action."

The appellant's contention is that this provision fails to provide the property owner with any opportunity to be heard on the question of the amount or validity of the assessment, and makes the same, in express terms, final and conclusive.

We cannot agree with the learned counsel for the appellant in this contention. If the statute had stopped with the provision that the assessment "shall be final and conclusive," there would be great force in his position upon that point, or if it had confined the collection of this tax to a proceeding *in rem*, or if the plaintiff had sought to enforce the tax under the provisions of section 49 of this act, which provides for a sale of the premises, in reference to which the tax is assessed, then we are not prepared to say that the position taken by the appellant might not be upheld.

But we are relieved in this case from the determination of that question, as the defendant is invited by the plaintiff into a tribunal where the assessment is, by this statute, made only presumptive evidence of the validity or correctness of the tax; and where the whole case is open to the objections and litigations of the defendant on the trial of the action, it cannot, we think, be said that the judgment in such action, if enforced against the defendant's property, would be taking the same without due process of law.

While it is, doubtless, the duty of the courts to sedulously guard the right of the citizen from invasion, without due process of law,

it is at the same time equally incumbent on the courts to uphold the constitutionality of acts of the legislature, unless the same are brought plainly within the constitutional prohibition.

This rule is elementary and has been recently adverted to and enforced by the highest court of this State.

In *Sweet* v. *The City of Syracuse* (129 N. Y., 329), O'BRIEN, J., quotes, with approbation, the language of RUGER, Ch. J., in *People ex rel. Killeen* v. *Angle* (109 id., 567), as follows: "Within settled rules it requires a case to be made showing clearly that the statute, when fairly and reasonably construed, is brought into conflict with some provision of the Constitution before the court can be justified in pronouncing it an unauthorized expression of the legislative will.

If the act and the Constitution can be so construed as to enable both to stand, and each can be given a legitimate office to perform, it is the duty of the courts to give them such construction."

We see no difficulty in this case in giving that constitutional provision its fullest effect and finding guaranteed to the defendant in an action prosecuted under section 48 of title 7 of this charter, the due process of law guaranteed by the Constitution. The law provided a method by which the defendant could have its day in court, and by the prosecution of this action it is furnished that opportunity to be heard of which it has availed itself by its defence.

In *Stuart* v. *Palmer* (74 N. Y., 183), which was an action to set aside an assessment as a cloud upon title, which was made by the act a specific lien upon the land, and no provision was contained in the act for the collection of the tax by action as in this case, nor did the act provide for notice of any kind to the land owner, and the assessment was held void, but that as its invalidity was so palpable and apparent on the face of the proceedings it constituted no cloud upon the title. But it will be observed that in that statute no action was provided for as in this, and no notice of any kind was authorized by the act.

In *Stuart* v. *Palmer* (*supra*) the court held in broad and most unequivocal terms, that the legislature has no power in itself and can confer no power upon any subordinate department of the government to arbitrarily seize the property of the citizen or impose upon him a tax without due process of law, and on proper notice to, and opportunity by, the citizen to be heard before some proper tribunal.

But the learned judge in that case says: "The legislature may prescribe the kind of notice, and the mode in which it shall be given," and in the same case, in defining what is meant in the Constitution by due process of law, the learned judge uses this language: "It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard and to defend, enforce and protect his rights."

If, therefore, in the action prosecuted against the defendant for the collection of this tax, the certificate of the superintendent of streets, and the audit of the common council, and their apportionment of the assessment against the defendant constitute only presumptive or *prima facie* evidence against the defendant in this action, it was within the power of the defendant to overcome that presumption, either as to the regularity or amount of the assessment in this action, and if beaten in that contest it cannot claim that its property is taken by taxation without due process of law.

But it is further insisted by the appellant that the common council exceeded its authority in passing a resolution that these streets should be paved with asphalt pavement.

It must be conceded that the common council of a city is a creation of the statute, and has only such powers as are conferred on it by that instrument. The power conferred on the common council in reference to the subject of the pavement of the streets is contained in section 42 of chapter 62 of the Laws of 1873 of the charter, and is in these words (amending § 8, tit. 7, chap. 385, Laws of 1862):

"The common council shall have power, from time to time, to adopt ordinances directing and requiring any of the streets, highways, lanes, alleys, walks and squares in said city or any part of either of them to be graded, paved, flagged, macadamized, planked or covered with broken stone or gravel, or regraded, repaved or reflagged at the expense of the owners or occupants of the lots and buildings lying upon the street, highway, lane or alley where such work shall be required to be done; and may in like manner direct and require the altering and repairing of the same; and said common council shall prescribe the time and manner in which such work shall be done, and which work shall be done under the superintendence and direction of the superintendent of streets."

The complaint alleged the taking by the plaintiff of the various steps by the common council to authorize the paving of these streets and charge the defendant with the payment for the same, most of which were not put in issue by the answer, and we are only called upon to consider such questions as are raised by the exceptions to the referee's findings and conclusions and discussed on this appeal.

Under the provisions above quoted the common council was authorized by ordinance to provide for the pavement of the streets of this city. This authority carried with it the power to direct by ordinance the kind of pavement to be used, and prescribed no limit to any particular kind of pavement. The charter conferred upon the common council the exercise of a discretion so long as it kept within the general designation of "pavement."

In the *Matter of Phillips* (60 N. Y., 22), the court held that "to pave is to cover with stones or brick or other substantial material, so as to make a level or convenient surface for horses," etc., and that the difference in the material could not change the character or general identity of the work as embraced in the generic term, "pave."

So the laying of a cross-walk comes within the general designation of paving. (*Matter of Petition of Burke*, 62 N. Y., 224.) So paving is held to be a more comprehensive word than flagging; it includes flagging, as well as other modes of making a smooth surface for streets and sidewalks. (*Matter of Burmeister*, 76 N. Y., 181.) It follows that when the legislature conferred on the common council the power to cause the street of the city to be graded and paved, they conferred upon them the power of adopting such material in that work as ordinarily might be regarded as proper for that purpose.

But it is insisted by the appellant that if this ordinance was valid, yet its provisions were not complied with, and that for that reason the plaintiff could not properly recover in this action. The first objection urged upon this point is that the work was not done in accordance with the provisions of section 48 of the charter, in that the work was done by the contract with the asphalt company, and not done by or under the direction of the superintendent of streets. Section 6 of the ordinance provides that "it will be the duty of the Superintendent of Streets, immediately after the expiration of such time (30 days), to cause the work to be done." .

Section 2 of the agreement between the asphalt company and the common council provides that the work shall be done in accordance with the terms of said ordinance, and that the same shall be done under the supervision and direction of the superintendent of streets of said city. While this work was not done by the superintendent of streets, it seems to have been done under his direction, and comes clearly within the letter, and, we think, the spirit of the charter in that respect. When the lot owners failed, for thirty days, to do this work, it became the duty of the common council to cause the work to be done, which any such owner or occupant had failed to do, at the cost and expense of such owner or occupant.

It is true that they were required to cause this work to be done within the terms of the charter, by or under the direction of the superintendent of streets; but the fact that it was done under a contract under his direction does not, in itself, violate the terms of the charter or the provisions of the ordinance of the common council. The charter, by section 48 * of the act above cited, provides that the work shall be done by or under the direction of the superintendent of streets, and the disjunctive form of connecting the methods of the performance of the work makes either allowable, and the complaint is not, therefore, defective in alleging that the work was done under his direction.

It is also objected that the notice required to be published by section 61 † of the charter must be deemed as duly and properly given, as that is so alleged in the complaint and does not appear to be denied in the answer, and there was no such modification of the ordinance, after the giving of the notice, as would invalidate or destroy the effect of the notice.

It is true that every requirement having the semblance of benefit to the owner must be strictly complied with. (*Newell* v. *Wheeler*, 48 N. Y., 486–490.) But we think that we have shown that the work was, in fact, done under the direction of the superintendent of streets in compliance with the provisions of the charter. Nor do we think that the pavement provided for by the ordinance under consideration comes within the provision of section 34 of the charter relating to ordinary repairs.

---

* As amended by chapter 62 of the Laws of 1873.
† Added by chapter 97 of the Laws of 1889.

It is also urged on this appeal that the contract imposed upon the property owners the burden of paying for keeping this pavement in repair for five years, and that the contract was, therefore, in excess of the power conferred in the common council in reference to paving streets.

In the *People ex rel. Hall* v. *Maher* (56 Hun, 81) the common council passed an ordinance requiring. the board of contract and apportionment to require the contractor to agree to keep a pavement of granite block, to be laid by the contractor, in repair for seven years. The charter provided that the repairing of all streets paved with granite block should be a charge upon the city, and not on abutting property owners, and the court held that such a provision in a contract for laying granite block pavement was unauthorized and tended to increase the burdens of abutting owners, and the contract was set aside as illegal.

If this contract is subject to the same objection it should share the same fate, if the objection was properly raised in the court below. The referee was not asked to find, and did not find, that this provision in the contract increased the expense of the work or enhanced the amount of the assessment.

But this question was evidently raised and discussed in the court below, and is, I think, fairly here, for adjudication. But I am inclined to concur in the views of the learned referee, that this case is substantially different in some of its essential particulars from that of the *People ex rel. Hall* v. *Maher* (*supra*). In that case there was an express contract to keep in repair for seven years. In this case the clause referred to in the contract had reference solely to the substantial character of the work performed and materials used in the performance of the contract.

The provision to which objection is made reads as follows :

"The party of the second part hereby covenants and agrees that it will do all the work required by such ordinance, and this contract, in such good and substantial manner that no repairs thereto shall be required for the term of five years after its completion."

If the contract had stopped here it would hardly be claimed that the contract went further than the ordinance, and was anything more than a guarantee that the work should conform to the requirements of the ordinance, and no one would doubt the power of the

common council to prescribe the quality of the work to be done by an ordinance; and yet if the contract had stopped there it can hardly be doubted that the contractor would be liable to the city to keep and make good to the city the conditions of the warranty that no repairs thereto shall be required in five years after its completion.

The covenant, therefore, to keep in repair for five years is not an independent obligation, but only a guarantee of the quality of the work contracted to be done. In this respect we think it essentially different from the contract under consideration in *People ex rel. Hall* v. *Maher* (*supra*), and that this case does not come under the condemnation of that decision.

We are, therefore, inclined to the opinion that there was a substantial compliance with the provisions of the charter by the common council in the construction of the pavement in question, and that the provisions of the charter under which they proceeded are not unconstitutional. Nor do we see any error in the admission or rejection of evidence by the referee for which this judgment should be reversed. The remaining and, perhaps, most difficult question in this case is as to the liability of the defendant to assessment for the paving of corner lots.

The defendant was originally the owner of all of these lands, including the lands by it dedicated to and accepted by the plaintiff for public streets. If this dedication and acceptance is to be considered as absolutely divesting the defendant of title or interest in the lands dedicated, and investing the plaintiff with the absolute title in fee of the streets, then it would be difficult to see how the defendant can be said to be abutting owners of these corner lots.

But if the abutting owners of these streets on either side are deemed to own to the center of the street, subject only to the easement of the public, for the purpose of a street, then such abutting owners become abutting owners of these corner lots, and are liable, as such, for this local improvement.

The fact that no legislation has been directly enacted to meet this question which has often been raised, and yet does not appear to have been judicially settled in this State, leads to the conclusion stated by the learned referee, as follows: "It may justly be said that the charter was enacted in view of the presumption that each owner's title and ownership extends to the center of the intersecting streets."

We are inclined, therefore, to the conclusion that for the purpose of this local improvement the defendant was an abutting owner, to the corner lots for which this assessment was made. We see no error in this case for which this judgment should be reversed, and the judgment must be affirmed, with costs.

PUTNAM, J., concurred; HERRICK, J., dissented.

Judgment affirmed, with costs.