[No. 1180. Decided June 27, 1894.]

J. D. McALLISTER *et al.*, *Appellants*, v. THE CITY OF TA-COMA *et al.*, *Respondents.*

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — STRICT PER-FORMANCE OF CHARTER PROVISIONS.

Where a street improvement ordered by a city council upon pe-tition merely called for the paving of a 54-foot roadway with bitu-minous rock upon a six-inch concrete foundation, the assessment therefor against abutting property will be set aside, when the board of public works has caused to be included in the improvement sidewalks and curbing, the cost of which has been included in the assessment.

The board of public works of the city of Tacoma has no authority when awarding a contract for the pavement of a street, to exact a bond guaranteeing the pavement for five years.

*Appeal from Superior Court, Pierce County.*

*Doolittle & Fogg* (*Charles O. Bates*, of counsel), for ap-pellants.

*F. H. Murray, S. A. Crandall,* and *James Wickersham* (*Alfred E. Buell*, of counsel), for respondents.

The opinion of the court was delivered by

STILES, J.—This case is like *Buckley v. Tacoma* (No. 1233), and *Wingate v. Tacoma* (No. 1234), *ante* p. 253, in some of the principal features, enough, perhaps, to decide it.   There was a petition to improve Tacoma avenue be-tween North 4th and North 5th streets, by paving the road-way 54 feet wide, with bituminous rock upon a six-inch concrete foundation.   The resolution of intention contained this specification: ''Said improvement to consist of paving the roadway 54 feet wide with bituminous rock upon a six-inch concrete foundation.''   The notice contained a copy of the resolution, with the usual variations, but it only men-

tioned the paving 54 feet wide; the estimate was declared
to be $5,800.    The engineer, however, included in his esti-
mate 640 lineal feet of eight-foot walk (kind not men-
tioned) and 667 lineal feet of concrete curb, in addition to
the paving.    Minute specifications were prepared by the
engineer, which covered these two items and some others
not provided for in the resolution, and bids for the work
were advertised for according to the plans and specifications
on file.    The board also made it a condition of bids that a
bond be given guaranteeing the pavement for five years.
The successful bidder entered into a contract to do the
work according to the drawings and specifications for $5,-
795, and an assessment was levied to pay that amount.

Two objections are made in this case that do not apply
to the others noted above — (1) that the board of public
works had no authority to go beyond the resolution of the
council which declared it to be the intention to pave the
street; and (2), that it had no authority to exact a bond
guaranteeing the pavement for five years.

The first proposition appears too clear for argument, and
the case illustrates the view taken in the former cases, that
the resolution should describe the work to be done.    The
board of public works has no independent originating
power in the matter of street improvements, whatever may
be its functions in other departments, for the charter makes
it simply the executive hand of the council in all such work.
Inasmuch as petititions for improvements come first into
its possession and are to be recommended *pro* or *con* by it,
it may well be that it should in every case recommend in
what way an improvement should be made, if made at all,
but beyond that it cannot go, and it must take the order
passed by the council and carry it out without substantial
changes or additions.    If, in the case before us, it could
take an order to pave, and add curbing and sidewalks, in
another case it can take one for sidewalking and add pav-

ing.   The only answer made to this point is that it does
not appear affirmatively that the appellants were charged
with the cost of the curb and sidewalks.   Let us see.   The
estimate included both items, and the specifications covered
them minutely.    The advertisement called for bids accord-
ing to the specifications, and the contract was made in ex-
act compliance with them.    What room for doubt can
there be that the expense of curbs and sidewalks was in-
cluded in the contract price of $5,795?   And when we find
that there were 24 lots of 25 feet frontage each, and that
each lot was assessed $241.67, or $5,800.08 in all, the
demonstration that everything called for in the specifica-
tions is assessed is to complete for cavil.    As to the effect
of such excess contracting in rendering an assessment void,
see *Partridge v. Lucas*, 99 Cal. 519 (33 Pac. 1082).

The second proposition is a twin brother of the first.
There is nothing in the charter on the subject of repairs to
streets, and the presumption is that ordinary repairs will
be taken care of by the city.    But the action of the board
of public works had the effect of making the abutting
property owners pay for all repairs, and not only that, but
pay for them five years in advance.    No such thing was
contemplated in the resolution, the parties interested had
no notice that any such thing would be done, and the board
had no jurisdiction whatever to make a tender for the work
depend upon such a condition.    *Brown v. Jenks*, 98 Cal. 10
(32 Pac. 701); *Excelsior Paving Co. v. Leach*, 34 Pac.
(Cal.) 116.

Judgment reversed, and cause remanded with instruc-
tions to grant the relief prayed for in the complaint.

DUNBAR, C. J., and ANDERS and SCOTT, JJ., concur.

ON PETITION FOR RE-HEARING.

STILES, J.—A very earnest petition for a re-hearing has
been filed in this case, with a view to obviating what was

said in the opinion concerning the power of the board of public works to contract for repairs in addition to the contract for the improvement. Two cases are cited from New York, one of which, *People v. Maher*, 9 N. Y. Supp. 94, seems to sustain the view taken by this court. The other, *Schenectady v. Trustees of Union College*, 21 N. Y. Supp. 147, it is claimed states a case like the one at bar and holds to the contrary. The contract in that case was, that the work should be done in such a manner that no repairs would be needed for five years, and that if any should be required the contractor would make them. This was held to be a mere guaranty of the quality of the work, and therefore not within *People v. Maher*, where the contract was precisely like the one before us. Both of these cases were decided in the third department of the supreme court of New York, but by different judges, and the latter does not undertake to deny the authority of the former. The principle adopted by us was right, and we adhere to it. The anxiety of counsel in this matter seems to be directed to a large body of warrants which have been issued in payment of other like improvements in the city of Tacoma, where the contracts were made by the board in the same way, but where assessments are not due; but it is evident that the provisions of the act of March 9, 1893, Laws, p. 226, on the subject of reassessments, have been overlooked, and that the anticipated danger is more fancied than real. Certainly, if that act can have any force, the actual value of any improvement made, where there was jurisdiction to make it at the expense of abutting property, can be reassessed.

Petition denied.

Dunbar, C. J, and Anders and Scott, JJ., concur.