EDWARD L. ROBERTSON ET AL., APPELLANTS, V. CITY OF
OMAHA ET AL., APPELLEES.

FILED SEPTEMBER 23, 1898.    No. 8241.

1. **Municipal Corporations:** COSTS OF REPAIRING PAVEMENT. Under
the provisions of section 69, chapter 12*a*, Compiled Statutes 1891,
the costs of making "ordinary repairs" in street pavements can-
not be assessed against the abutting lot owner, but must be paid
by the city.

2. ———: ———: CONTRACTS. A paving contract which binds the
contractor to bear the expense for the term of ten years of "all
repairs which may, from any imperfection in the said work or
material, become necessary within that time," does not include
"ordinary repairs," nor is said stipulation in violation of said
chapter 12*a*.

3. ———: ———: ———.  The contract mentioned in the opinion construed and *held* not to cast the burden on the abutting lot owner to make "ordinary repairs."

4. **Review:** CONFLICTING EVIDENCE. This court will not disturb a finding of fact based upon conflicting evidence.

5. **Municipal Corporations:** COST OF PAVING STREET. Where, in case a street paved with wooden blocks laid on a concrete base, such blocks have become worthless and are entirely removed in pursuance of a contract entered into with the city, and replaced with vitrified brick laid on the old base, such new improvement is not an "ordinary repair" within the meaning of the statute, but is a repavement of the street, and to pay the costs thereof a special assessment may be made against the abutting real estate.

APPEAL from the district court of Douglas county. Heard below before DUFFIE, J.  *Affirmed.*

*J. C. Cowin* and *W. D. McHugh,* for appellants.

*W. J. Connell* and *E. H. Scott, contra.*

NORVAL, J.

The object of this action is to perpetually restrain the city of Omaha from levying a special assessment or special tax upon the premises described in the petition to pay the costs of repaving Leavenworth street in said city, between Sixteenth street and Twenty-ninth avenue. From a decree for the city plaintiffs appeal.

It is disclosed by the record that there was duly created in said city street improvement or paving district No. 447, including Leavenworth street, and the property abutting thereon on each side to the distance of 132 feet, between Sixteenth street and Twenty-ninth avenue, and that said Leavenworth street in said improvement district was paved with cedar blocks laid on a concrete foundation.  Prior to April 12, 1892, this pavement had become in such a dilapidated and worthless condition as to require said portion of Leavenworth street to be repaved, and on said date an ordinance was duly passed declaring the necessity of repaving said portion of the street, and authorizing the property owners in said im-

provement district, within 30 days, to designate the kind of material to be used in making the improvement. A petition was filed with the city clerk, signed by plaintiffs and other owners of lots abutting upon Leavenworth street within said improvement district No. 447, and representing a majority of the feet frontage thereon and a majority of the area within said district, asking the repavement of said street in said improvement district and designating vitrified brick as the material desired to be used in such repaving. An ordinance was subsequently passed and approved, providing for the repavement of said Leavenworth street with vitrified brick, and ordering the board of public works to contract therefor. A contract was duly made with one Hugh Murphy to repave said street, who performed the work, and the city authorities accepted the improvement. Afterwards the city council sat as a board of equalization, due and legal notice thereof first having been given, for the purpose of equalizing the proposed levy of special taxes to meet the costs of said improvement, and at such meeting adopted a plan of assessment. This suit was instituted to prevent the levy of the special taxes in accordance with such plan. The contract with Hugh Murphy, under which the improvement was made, contained the provisions following:

"15. The contracting party of the second part hereby expressly guaranties the above work for the full period of ten years from approved acceptance of the work, and said party binds himself and his heirs and assigns for the entire expense of all repairs which may from any imperfection in the said work or material become necessary within that time.

"16. And it is hereby agreed that the amount reserved, and accruing interest by the city of Omaha, as guaranty for the maintenance of the work herein specified, shall be used as a special fund for making repairs or reconstruction as deemed necessary by the board of public works, in the manner provided, as follows:

" 'If at any time within the period of guaranty, after the completion and acceptance of the work herein contracted for, the said work shall, in the judgment of the city engineer and board of public works, require to be repaired and resurfaced or reconstructed, the board of public works shall notify the said second party to make the repairs required, and if the said second party shall neglect to proceed with such repairs within three days from the date of the service of such notice, then the board of public works shall have the right to cause such repairs or reconstruction to be made in such manner as they and the city engineer shall deem best, and the whole cost thereof, both for labor and material, shall be paid out of the special fund before mentioned, or if necessary, at the expense of the contractor and sureties.'

"17. * * * Failure or neglect on the part of the inspector to condemn inferior work or material at the time it is being supplied or done, shall not be construed to imply an acceptance of any work. If it becomes evident to the board of public works, at any time prior to the payment of the 15 per cent reserve, that improper material has been furnished or inferior work done upon said improvement, it shall have the right to order the removal of such material or work, and to require that suitable material be supplied and proper work done in lieu thereof by said contractor without expense to the city.

"18. As a basis of interpretation of the acceptable condition of pavements at the expiration of the period of guaranty, it is hereby agreed and understood that if the paving material is found and the wearing surface of the roadway shall possess no less than 75 per cent in the thickness of the specified depth of the original paving material, in a reasonable smooth condition for travel, it shall be considered as meeting the requirements for final acceptance."

The contract, under the head of "Guaranties," contains this stipulation:

"All pavements embraced in these specifications and

bidding specifications are based upon a guaranty that the pavements will be well and substantially constructed as heretofore provided, and that such pavements will be maintained by the contractor in a condition of continuous good order and repair for the period of ten years from and after the date of their approved acceptance. All securities held as reserves and accruing interest thereon shall be subject to use for such maintenance and repairs by the city of Omaha in the event of the failure of the contractor to keep such pavements in proper condition, it being expressly understood and agreed that the board of public works and city engineer shall determine when repairs or reconstruction are necessary; and failure by the contractor to comply with a written order, or to enter upon such work within ten days, and complete the same within a reasonable time, shall be held as sufficient authority on the part of the city of Omaha to execute the work, and draw upon the reserve fund to defray the expenses thereof, or at the expense of the contractor and sureties, or both. * * * It is distinctly understood and hereby agreed that all guarantied pavements shall receive prompt attention in their maintenance, and when repairs shall fail to be made within twenty days of written notice from the board of public works, a charge of ten cents per square yard of the entire area within the block requiring repairs shall be made against the contractor for every month or fraction thereof that the repairs of said pavement shall be neglected."

It is argued by counsel for plaintiffs that the proposed levy of the special taxes in question is illegal for the reason it includes the costs and expenses of repairing the pavement for ten years. This argument is predicated upon the provisions of the contract already set out, and a clause contained in section 69, chapter 12a, Compiled Statutes 1891. This section, after authorizing the levy and collection of special taxes and assessments upon the lots or pieces of ground abutting upon or adjacent to any street to defray the costs and expenses of improving or

repairing such street, declares "that the above provision shall not apply to ordinary repairs of streets or alleys, and one-half of the expense of bringing streets, avenues, alleys, or parts thereof to the established grade shall be paid out of the general fund of the city except as otherwise hereinafter provided." It would seem that this clause places the burden upon the entire city to make ordinary street repairs, and that special assessments cannot be levied upon the real estate abutting upon any street to cover the expenses of making the ordinary or usual repairs of the pavements thereon. If, therefore, the contract with Murphy obligated him to make the ordinary repairs required to maintain in good condition the pavement laid by him on Leavenworth street, in said district No. 447, there would be much force to the argument of plaintiffs, that this special assessment is invalid, at least to the extent that such assessment included the costs of all ordinary repairs, since the expense of making them is a burden assumed by the city and cannot be assessed upon adjacent lot owners. An examination and consideration of the paving contract entered into by the city with Murphy are necessary to determine whether the proposed assessment requires the property owners to pay more than can be properly chargeable to them under the law. It will be observed that paragraph 15 of said contract merely makes it the duty of the contractor to bear "the entire expense of all the repairs which may from any imperfection in said work or material become necessary." It requires no argument to show that this provision does not cover usual or ordinary repairs, or the expenses incident to the natural wear of the pavements or its destruction by floods or causes other than those resulting from defective workmanship or materials. Manifestly said paragraph was merely a guaranty on the part of the contractor for the faithful performance of his contract, and required him merely to make good any defects arising from bad materials or the improper manner in which the work was performed.

Such stipulation or guaranty cast no unlawful burden upon the adjacent property owners. They are required to pay for the kind of materials and workmanship designated in the contract, and it is perfectly proper for the city to stipulate that the contractor shall be at the expense of making all the repairs occasioned by the improper construction of the pavement, either in work or materials, or both, so that the abutting lot owner shall receive what he is required to pay for. There are other provisions in the contract, other than those found in paragraph 15 quoted above, which relate to the subject of repairs, but it would be a strained and unnatural construction to hold that they refer to what is termed "ordinary repairs." If it had been the intention to require the contractor to bear the expense of all the repairs, whether resulting from use of the pavement or defective materials, or any other cause, then language expressive of such purpose doubtless would have been employed, instead of the stipulation found in said paragraph 15. Applying the usual rules of interpretation to the contract, and construing all the provisions together, it is reasonably certain that no obligation was imposed upon Murphy to make what is denominated "ordinary repairs." As suggested by counsel for the city, by paragraph 15 he guarantied the work for a specified period, and was to bear the whole expense of replacing defective work and material during the time, and the references elsewhere in the contract on the subject of repairs should be read in the light of said guaranty, since they are intended to secure the enforcement of the stipulation against defective workmanship and materials. The conclusion is irresistible that the contract does not contemplate the making of ordinary repairs, such as the act incorporating metropolitan cities relieves the abutting lot owner from making.

Upon this branch of the case counsel for plaintiffs and appellants have cited, to support their position that the contract we are considering is void, the decisions in

*People v. Maher*, 9 N. Y. Supp. 94; *Brown v. Jenks*, 32 Pac. Rep. [Cal.] 701; *Verdin v. City of St. Louis*, 27 S. W. Rep. [Mo.] 447. An examination of those cases will disclose that each was based upon a provision in the contract materially different from those in the one we have been considering, in that in those cases the stipulation relating to repairs was independent in character, covering usual repairs, and not intended merely as a guaranty of the faithful execution of the paving contract by the contractor.

The proposition that the contract with Murphy is not rendered void by the provisions therein relating to repairs is sustained by the adjudications elsewhere. In *City of Schenectady v. Union College*, 66 Hun [N. Y.] 179, the stipulation of the paving contract there under consideration by the court was essentially the same as the one before us, and the court in the opinion say: "The provision to which objection was made reads as follows: 'The party of the second part hereby covenants and agrees that it will do all the work required by such ordinance, and this contract, in such good and substantial manner that no repairs thereto shall be required for the term of five years after its completion.' If the contract had stopped here it would hardly be claimed that the contract went further than the ordinance, and was anything more than a guaranty that the work should conform to the requirements of the ordinance, and no one would doubt the power of the common council to prescribe the quality of the work to be done by an ordinance; and yet if the contract had stopped there it can hardly be doubted that the contractor would be liable to the city to keep and make good to the city the conditions of the warranty that no repairs thereto shall be required in five years after its completion. The covenant, therefore, to keep in repair for five years is not an independent obligation, but only a guaranty of the quality of the work contracted to be done. In this respect we think it essentially different from the contract under consideration in *People v.*

*Maher, supra*, and that this case does not come under the .condemnation of that decision."

The precise question was passed upon by the supreme court of New Jersey in an able opinion rendered in *Wilson v. Inhabitants of the City of Trenton*, 38 Atl. Rep. 635. The court observed: "The first ground upon which it is urged that this contract should be declared invalid is that, by its terms, Montgomery is made to guaranty the endurance of the pavement for a period not less than five years from the date of its completion and acceptance by the city, and to maintain the pavement in good condition at the finished grade of the street at his own cost and expense during said period; and that upon his failure to do so, the city is authorized to make such repairs as may become necessary, and deduct the cost thereof from such moneys as it may have in hand belonging to the contractor. This provision of the contract, it is claimed, imposes upon the abutting owners, who are liable to assessment for the cost of this work in proportion to the benefit received by them therefrom, not only the burden of paying for the improvement, but also the cost of keeping it in repair for a period of five years after its completion. If this be the effect of the provision, it is clearly illegal, for, by the eighty-seventh section of the charter of the city of Trenton, 'after any street shall have once been paved, then the city shall take charge of and keep the same in repair at the general expense.' (P. L. 1874, p. 376.) We are referred to the following cases, which, it is said, support the prosecutor's contention: *People v. Maher*, 56 Hun [N. Y.] 81, 9 N. Y. Supp. 94; *Verdin v. City of St. Louis*, 131 Mo. 26, 33 S. W. Rep. 480, 36 S. W. Rep. 52; *Brown v. Jenks*, 98 Cal. 10, 32 Pac. Rep. 701; *Excelsior Paving Co. v. Leach*, 34 Pac. Rep. [Cal.] 116; *Fehler v. Gosnell*, 35 S. W. Rep. [Ky.] 125; *Boyd v. City of Milwaukee*, 66 N. W. Rep. [Wis.] 603. The theory upon which these cases are decided is that when, by the terms of the contract, the contractor is required not only to lay the pavement, but also to maintain and

keep it in repair for a certain period after its completion, the abutting owners are necessarily required to pay a higher price by reason of the provision to maintain and keep in repair; and that a contract which throws on abutting owners anything more than the burden of having the pavement well constructed in the outset is invalid, so far as they are concerned. The contract in each of the cases referred to differed, however, in an important particular from that now before us.. In those cases the provision for maintaining or repairing was treated as an independent one, while in the one under consideration it is merely an appendant to the guaranty of the durability of the pavement. What the contract, in effect, says is this: The contractor guaranties to put down a pavement which shall remain in good condition for at least five years. If it gets out of order during that period, the contractor must restore it at his own expense; and if he fails to do so the city may make the repairs, and retain the cost thereof out of the contract price. It does not require him to make all the repairs which shall become necessary during the period named, but only those which arise from lack of durability of the pavement. Certainly, it cannot, with reason, be contended that a provision in the contract requiring the contractor to guaranty the durability of his work for a reasonable period imposes upon the adjacent property owners the burden of keeping the street in repair. It is merely an added precaution for insuring good workmanship and the use of good material. And if the contractor, notwithstanding the guaranty, fail to lay a durable pavement, it cannot be doubted that the city would have the right to recover from him, in a suit for breach of his guaranty, the cost of restoring the same to a good condition. It seems to me that the provision in the contract relating to the maintenance of the pavement is a mere method of enforcing the guaranty of the contractor by a speedier and less expensive method than by suit, and that it does not have the effect of imposing upon abutting owners

any burden other than that of having the pavement well constructed at the outset. In the case of the *City of Schenectady v. Union College*, 66 Hun [N. Y.] 179, 21 N. Y. Supp. 147, a similar view was taken by the supreme court of New York to that here expressed, in construing a contract like that now before us; and, although the judgment in that case was afterwards reversed by the court of appeals, 144 N. Y. 241, 39 N. E. Rep. 67, it was on another ground altogether, nothing being said by the appellate tribunal which casts doubt upon the correctness of the construction put by the lower court on the contract in that case."

It is also insisted that the pavement in question was so worthless that it would be a fraud upon the property owners to compel them to pay the assessment. The evidence adduced on the trial on this issue, as well as to establish collusion between the contractor and the city authorities, in the matter of the construction and approval of the work, is conflicting and irreconcilable. Suffice it to say that the lower court specially found that the material was furnished and used in the construction of the improvement in question in substantial conformity with the terms of the contract; that the repavement after it had been finished was accepted by the city engineer, the board of public works, and the city authorities; that in doing so they acted in the utmost good faith without either fraud or collusion, and the bill of exceptions contains ample proofs to repel all inference of fraud, and to establish that the pavement was constructed in conformity with the terms of the contract. In declining to disturb a finding of fact made upon conflicting testimony, we merely observe a well settled rule, which has been frequently applied.

The final argument presented is that the work done by Murphy under the contract was not a repavement of Leavenworth street, but was merely a repair of an existing pavement, and, therefore, the city was liable therefor, and it possessed no authority to impose a special assess-

ment against the real estate of plaintiffs to pay the same. This contention is grounded upon the single fact that the concrete foundation of the former cedar block pavement was utilized in making the improvement in controversy. The entire wearing surface of wood of the old pavement was removed and replaced with vitrified brick, and the mere using of the old base of concrete did not constitute the work an "ordinary repair" within the meaning, and contemplation, of the statute. The assessment assailed was made for the repavement of the street, and the invalidity thereof not having been shown, the decree is accordingly

AFFIRMED.