---

## SHANK ET AL. v. SMITH ET AL.

[No. 19,602.   Filed November 15, 1901.]

MUNICIPAL CORPORATIONS. — *Street Improvements.* — *Contracts.*— *Guaranty.*—*Repairs.*—A contract for a street improvement under §§4288-4300 Burns 1901, conditioned that the contractor should make all repairs for a period of seven years that became necessary as a result of unskilful construction or unsuitable material, retaining a certain per cent. of the contract price as a guaranty fund for such repairs, is not invalid as assessing the cost of repairs as part of the cost of the construction of the improvement. *pp. 403-410.*

SAME.— *Street Improvements.— Assessments.— Hearing.— Waiver.— Collateral Attack.*— Abutting property owners will not be permitted to waive their right to injunction or mandamus to compel a hearing on the engineer's report for street improvement assessments until the assessments are approved, and make the denial of a hearing available as a defense to an action to enforce the collection of the assessments. *pp. 410-412.*

SAME.—*Street Improvements. — Assessments.— Hearing.— Collateral Attack.*—The right of the common council or board of trustees to hear and consider the engineer's report of assessments for street improvements and the adjustment of the assessments to the benefits received is a *quasi* judicial power, and, where the board had jurisdiction of the person and subject-matter, their judgment, fair on its face, cannot be attacked in a collateral proceeding. *p. 412.*

From Marion Superior Court; *Vinson Carter,* Judge.

Action by William C. Smith and others against Clara L. Shank and others for the enforcement of street improvement assessments. From a judgment for plaintiffs, defendants appeal. *Affirmed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores* and *R. F. Davidson,* for appellants.

*L. M. Harvey, W. A. Pickens, L. A. Cox* and *S. W. Kahn,* for appellees.

HADLEY, J.—In 1898 the board of trustees of the town of Irvington entered into a contract with John Moore for the pavement of the roadway of Washington street, between Wallace street and Central avenue, with brick. Moore assigned the contract to appellee Smith, who constructed the pavement. In making the contract, and in accepting the work when completed, and in assessing the cost thereof against the abutting property, the board of trustees proceeded under §§4288 to 4300 Burns 1901, commonly known as the "Barrett law." Appellants owned lots, abutting for 400 feet on the improvement, which were assessed their proportion of the cost. Appellants refused to pay the same, and appellee brought this suit to foreclose his lien. The complaint is in the usual form. A demurrer thereto was overruled. Appellants answered in five paragraphs, a demurrer to each of which was sustained, and appellants refusing to plead further, a judgment for the amount of the assessment and decree foreclosing appellee's lien, was rendered against them. Three questions are presented by the assignment of error. (1) The constitutionality of the Barrett law; (2) the validity of the contract under which the improvement was made; (3) the denial of a hearing on the question of benefits, as set forth in the fifth paragraph of answer, was in effect the taking of appellants' property without just compensation and without due process of law.

I.    The first of these questions has recently received

consideration by this court in several instances, and must now be considered as settled. See *Adams* v. *City of Shelbyville,* 154 Ind. 467, 49 L. R. A. 797, 77 Am. St. 484; *McKee* v. *Town of Pendleton,* 154 Ind. 652; *Martin* v. *Wills, ante,* 153; *Leeds* v. *Defrees, ante,* 392.

II. The second question is stated by appellants thus: "The board of trustees had no authority to contract for repairs to a street, and assess the cost thereof against abutting property as a part of the cost of construction."

As preliminary to the question stated it is important, first, to determine whether the contract before us, as the same relates to the contractor's duty for a period of seven years subsequent to the acceptance of the work by the town, is a contract for repairs, or a contract of guaranty that the improvement shall be executed, in all respects as good as the contractor has engaged to make it. It is alleged in the second paragraph of answer that the improvement consisted in the paving of the street with brick as described in the complaint; that certain written and printed plans, profiles, and specifications were by the express terms of the contract made a part thereof; that bids were made by others and by said John Moore, upon the terms and specifications set forth in said contract, and the work awarded to Moore under the terms thereof; that by the terms of the contract the contractor was obligated not only to improve the street by constructing the pavement in accordance with the plans and specifications, but was also by the express terms of the contract obligated to maintain the pavement in repair for a period of seven years from the time of approval of the assessment roll by the board of trustees, without any compensation in addition to that expressed in the contract, and by the express terms of the contract he was required to and did guarantee such repairs for the period of seven years. That part of the contract exhibited with the answer is as follows: "It is understood and agreed that this guaranty shall cover all repairs growing out of imperfections or unsuitability of

materials or composition, too great or too little moisture, all defects of workmanship, extremes of heat or cold, and all other effects of climate, and covers all other excessive deteriorations more specifically described as follows: In case of asphalt, brick, or wooden block, any holes or cracks in said pavement and any defects resulting from the composition of the wearing surface or foundation. The pavement, at the expiration of the guaranty period, shall be in good condition, present surface so true and even that it shall in no way be an obstruction to travel, and have drainage so perfect that water shall collect in no place to a depth of more than one-fourth of an inch. The determination of the necessity for repairs rests entirely with the board, whose decision upon the matter shall be final and obligatory upon the contractor; and the guaranty herein stipulated shall extend to the whole body of the improvement and all its appurtenances and the repairs required under it may extend to the total reconstruction of the whole body of the improvement if, in the judgment of the board, such total reconstruction shall become necessary by reason of any defect in original materials or construction. Should the engineer require it, the contractor shall, at any time during the period of construction or maintenance of the work contracted for, make such opening, and to such extent, through any part of said work, as the engineer may direct, and he shall make the same good again to the satisfaction of the board. The party of the first part (the contractor) hereby consents that the said town shall retain, out of the total amount shown by the said estimate to be due from said town on account of street and alley crossings, a sum equal to twenty cents per square yard for each square yard of pavement constructed, which sum shall be and constitute a repair guaranty fund in the hands of said town for the purpose of securing the repair and maintenance of said pavement by the contractor to the satisfaction of the board. In the event the sum above specified shall exceed the amount due said contractor from said town

on account of the street and alley crossings, then said contractor shall deposit a sum sufficient to make said guaranty fund equal to twenty cents per square yard for each square yard of improvement constructed. This guaranty fund, or only such part of it as shall remain in the hands of the town unexpended, as above provided, at the expiration of said guaranty period, shall be paid to the contractor, with interest at the rate of five per cent. per annum. That in the event the pavement, during the guaranty period, is not in good condition and repair, to the satisfaction of the board of trustees of said town, and if the first party shall refuse or neglect to put the same in repair to the satisfaction of said board on fifteen days' notice, said board may cause the same to be done, and pay for the same out of the guaranty fund above provided for, and said sum or sums so paid for such repair out of said guaranty fund shall constitute and be considered a payment by the said town upon the amount due from it to the contractor on account of the cost of street and alley crossings, and the town shall retain the balance of said funds, if any, in said repair and guaranty fund for use in future repairs. Should the cost of such repairs made by order of the board of trustees exceed the amount retained as above provided, or the amount of said repair fund remaining on hand at the time of making such repairs, the party of the first part shall be held responsible to the town board for the amount of such excess, and such excess shall be collected, by suit, of the contractor."

It is further alleged that the cost of keeping the pavement in repair as required by the contract was taken into consideration by the bidders and by Moore in submitting his bid, and was included in the contract price per lineal foot, for which the contractor performed his work, and for which the assessment was made.

It is proper to observe that appellants do not in their answer plead the contract in terms, nor inform us fully as to its contents. It may therefore be assumed, as against the

answer, that the contract called for the construction of a pavement, which in form, and quality of material and workmanship, would withstand ordinary uses and climatic changes for a term of seven years, and at the end of that period be in good condition. It cannot be said that seven years is an unreasonable or unusual length of time for a well constructed brick pavement to endure in good condition. Such a pavement the town had the right to put down, and charge the cost to the adjacent property. But in exercising the power to levy special taxes much caution should be observed, and it may be said to be the duty of municipal officers, when proposing to assess the cost against abutting property, to provide for a substantial and durable improvement, and there can be no doubt of their power to throw about the contract such safeguards as will insure its complete performance. Then in contracting for a pavement which is stipulated and warranted to last seven years, and be then smooth and in good condition, the trustees had a right to consider the incidents that were in course of the period liable to arise and destroy the sufficiency of the personal bond of the contractor to make good his contract, and we can see no reason for restricting them to such bond, or for denying them the power to contract for a further and more reliable security by withholding a part of the money due the contractor from the city, until it is determined that the contract is, in fact, executed according to its terms. And if the guaranty provision of such a contract as is set forth in the answer involves no extra cost above what it would have been if the work had been executed at the outset according to the contract, then it must be held to be a contract of guaranty, and not one for repairs. The elements of the guaranty are as follows: The contractor shall make all repairs for a period of seven years that become necessary as a result of (a) defective or unsuitable material; (b) unskilful workmanship; (c) excessive wet or dry weather; (d) extremes of cold or hot weather; (e) any

climatic cause; (f) all deteriorations which produce holes or cracks in the pavement; (g) all defects resulting from the decomposition of the wearing surface or foundation. The pavement at the end of seven years to be in good condition, and present a surface so even as will not obstruct travel, and will drain therefrom all water in excess of one-fourth of an inch deep. The guarantee to extend to the whole body of the improvement, if in the judgment of the board such total reconstruction shall become necessary by reason of any defect in original materials, or construction. The contractor to make such openings in the work as the engineer may require, and make them good again to the satisfaction of the board. The meaning of all this is that the improvement shall be so skilfully constructed and the materials of which it is composed shall be of a character to, and will, endure ordinary use, and resist the extremes of wet and dry and cold and hot weather without cracking, and without becoming uneven in surface, for a period of seven years. There is nothing in the guaranty that imposes upon the contractor the duty to make general repairs, or such repairs as may become needed from extraordinary use, or from violent injury, by individual, or mob, or from any other cause, other than such as result from unskilfulness in construction, or unsuitableness of material, except the inconsequential duty to make and restore the openings that may be required by the engineer. The contract is an entirety for the sole purpose of providing for the permanent improvement of the street, and the guaranty provision is a stipulated means by which the contractor shall be required to furnish the sort of pavement he proposes to make. The guaranty is of the essence of the contract for the improvement, is in every respect inseparable from it, and goes for nothing, if the contract at the outset is executed according to its terms, and the averment in the answer that the cost of maintenance and repair was included in the bid of the contractor has, therefore, no force. In pavement making it is

difficult for the most skilful and experienced expert to discover all defects in material, foundation, and other parts of the work, as it progresses, and such defects are often slow of development, and it seems but a wise precaution, and clearly one that the taxpayer should not complain of, for municipal officers so to frame their contracts that neither the abutter nor the municipality shall be called upon to do that which the contractor should have done. A stipulation that the contractor shall wait for a part of his pay until it is proved that his contract has been faithfully kept does not necessarily imply an increase in the first cost of a well constructed street; neither does a covenant to make good his own defaults imply an obligation to repair the whole street, irrespective of the causes which necessitate such repairs. Upon the whole, it seems that the contract before us was designed, and sufficiently phrased, to secure the construction of a good job of brick pavement; and does not impose upon the abutters any burden beyond that of insuring good materials and good workmanship; that nothing more was intended, or may be reasonably implied; and that the provision for mending was a guaranty of performance which furnishes no reasonable ground for an increase of cost.

Kindred questions have been frequently decided by the courts, which decisions upon first blush seem to be in irreconcilable conflict, even those of the same state in some instances, but upon a closer examination it will be found that one uniform principle has been generally applied, and the diversity has arisen from an application of the principle to the facts of particular cases. The general rule being that when the contract amounts to nothing more than an agreement to make the work what it should have been in the first instance, it is a mere guaranty of the quality of the work, and is not unauthorized, but anything in excess of this is a contract for repairs, which is unauthorized in cases where the proper preliminary steps have not been taken, or in cases where the duty to repair rests upon the municipality

at large.   Among the cases of the class to which this belongs
are the following:   *Robertson* v. *City of Omaha* (1898),
55 Neb. 718, 76 N. W. 442, 44 L. R. A. 534; *Osburn* v.
*City of Lyons* (1897), 104 Iowa 160, 73 N. W. 650; *Allen*
v. *City of Davenport* (1898), 107 Iowa 90, 77 N. W. 532;
*Cole* v. *People* (1896), 161 Ill. 16, 43 N. E. 607; *Latham*
v. *Wilmette* (1897), 168 Ill. 153, 48 N. E. 311; *Barber
Asphalt Co.* v. *Ullman* (1897), 137 Mo. 543-565, 38 S. W.
458; *Seaboard Bank* v. *Woesten* (1898), 147 Mo. 467-478,
48 S. W. 939, 48 L. R. A. 279; *Barber Asphalt Co.* v.
*Hezel* (1900), 155 Mo. 391, 56 S. W. 449, 48 L. R. A.
285; *State* v. *City of Trenton* (1897), 60 N. J. L. 394, 38
Atl. 635; *Wilson* v. *City of Trenton* (1898), 61 N. J. L.
599, 40 Atl. 575, 44 L. R. A. 540, 68 Am. St. 714; *City
of Schenectady* v. *Union College* (1892), 66 Hun 179, 21
N. Y. Supp. 147.

Among the cases applying the principle to instances
wherein contracts had been made for maintenance or re-
pairs, in excess of those necessitated by the default of the
contractor, for a definite period, in connection with im-
provement contracts, are these:   *Brown* v. *Jenks* (1893),
98 Cal. 10, 32 Pac. 701; *Boyd* v. *City of Milwaukee*
(1896), 92 Wis. 456, 66 N. W. 603; *City of Portland* v.
*Paving Co.* (1898), 33 Ore. 307, 52 Pac. 28, 44 L. R. A.
527, 72 Am. St. 713; *McAllister* v. *City of Tacoma* (1894),
9 Wash. 227, 37 Pac. 447, 658; *People* v. *Maher* (1890),
9 N. Y. Supp. 94; *Fehler* v. *Gosnell* (1896), 99 Ky. 380,
392, 35 S. W. 1125; *Verdin* v. *City of St. Louis* (1895),
131 Mo. 26, 33 S. W. 480, 36 S. W. 52; *Alameda, etc., Co.*
v. *Pringle* (1900), 130 Cal. 226, 62 Pac. 394, 80 Am. St.
124.

As illustrative of the contracts under review in these last
cases, it was said in the California case:   "Besides it is for
all repairs, and not such as may result from defects in the
work."   In the Wisconsin case:   "If the agreement to re-
pair were confined to repairs made necessary by defective

workmanship or material, the argument would be entitled to serious consideration. But they go further. They cover in terms everything that may happen to the pavement except the cutting through of certain pipes." In the Oregon case: "But the bond in question is distinctly an independent undertaking to keep the street and pavement in repair * * * covering, in effect, all injuries liable to arise from whatsoever source", and in the Washington case: "But the action of the board had the effect of making the abutting property owners pay for all repairs, and not only that, but pay for them five years in advance." The last case cited goes to an extreme length.

III. In the fifth paragraph of answer it is alleged that the town proceeded under the Barrett law and gave the proper notice of the time and place for the hearing of the engineer's report. The answer then continues: "And defendants aver that pursuant to the notice alleged in the complaint that a hearing would be accorded to the owners of property bordering on said improvement before a committee appointed by said board to consider the report of said engineer, defendants appeared before said committee at the time and place specified in said notice, and objected to the said report and the assessments made against their property by said report, on the ground that the cost of said improvement assessed against defendants' said property and each piece and parcel thereof was largely in excess of the benefit received or which would be received by the said property from said improvement, and demanded a hearing to enable the defendants to show that the portion of the cost of said improvement assessed against their said property and each piece and parcel thereof was largely in excess of the benefits accrued or which would accrue to said property from said improvement; but the defendants were by the said committee and the said board of trustees of said town denied a hearing as to said question of benefits to said property, and the said committee reported to the board of trustees of said

town, recommending the adoption of the said report of said town engineer without alteration or change, and the said board of trustees thereupon adopted said report without alteration or amendment,   *   *   *.   And the defendants, by the said action of the said committee and the said board of trustees of said town, were denied a hearing as to the question of fact whether the said assessment against defendants' said property was in excess of the benefits accrued or which would accrue to said property from said improvement."

It is averred in the answer that appellants appeared before the special committee having the engineer's report under consideration, at the time and place specified in the notice, and objected to the report on the ground of excessive assessments against their property, and demanded a hearing to enable them to prove it.   But the committee and also the board of trustees denied them a hearing.   What was the nature of the demand and denial?   Was appellants' offer to testify before the committee, or their offer to produce other competent witnesses who would testify concerning their benefits, denied?   Did appellants appear before the board of trustees, as they had the right to do, and make objection, and demand a hearing?   Or was the performance a verbal objection to the report, and demand for a hearing at some indefinite or unreasonable time, or before a jury, or at a time, or upon terms named by the objectors?   And how did they ascertain that the board denied them a hearing if they did not appear before it?   We are not informed on these matters, and we cannot enter the field of conjecture in quest of missing facts to make out a cause of defense.   This court cannot accept the conclusion of the pleader, but must have before it the facts from which the conclusion is drawn to enable it to determine for itself whether a hearing was denied.

Assuming that both the committee and board of trustees refused to grant appellants a hearing, they could not be permitted to waive their right to bring mandamus to compel a hearing, or injunction against the approval of the engin-

eer's report until it had been accorded, and make the denial of a hearing available as a defense in an action to collect the assessment. The right of the board in such cases to consider the engineer's report, and adjust the assessments to benefits received is a *quasi* judicial power. Here the proper notice was given, the board had jurisdiction of the person and subject-matter, the power to decide, and their judgment thus fair upon its face cannot be collaterally attacked. *Leeds* v. *Defrees, ante,* 392.

Some subsidiary questions touching the subject of repairs which have been discussed become immaterial under the view we have taken. Judgment affirmed.