THE BARBER ASPHALT PAVING CO., Appellant, v. HEZEL,

In Banc, March 27, 1900.

City of St. Louis: CHARTER: RECONSTRUCTION AND MAINTENANCE OF STREETS: SPECIAL TAX BILL. The charter of the city of St. Louis provides that the cost of repairs of streets and highways shall be paid out of the general revenue fund of said city. *Held*, notwithstanding, that a special tax bill issued for the cost of reconstructing a street is a valid charge upon abutting property, although the ordinance and contract under which said improvements were made, require the contractor to maintain the pavement in repair for a term of years after its reconstruction. (Following Seaboard National Bank v. Woesten, 147 Mo. 467.)

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED (*with directions*).

*W. C. Scarritt* and *Adiel Sherwood* for appellant.

(1) The maintenance ordinance, sec. 564, Revised Ordinance, is a valid enactment, and so, also, is ordinance No.

17151, under which the work was done. Seaboard Bank v. Woesten, 147 Mo. 467; Morse v. Westport, 110 Mo. 509; St. Louis v. Schoenbusch, 95 Mo. 622; State v. Inhab. of Trenton, 20 Atl. Rep. 1076; Elliott, Roads & Streets, 335; 1 Kent, Com. 464; Bishop, Stat. Crim. 127; Johnson's case, 1 Greenl. (Me.) 230; Suth. St. Const., sec. 341; Grover v. Huckins, 26 Mich. 476; Dullam v. Wilson, 53 Mich. 393; Railroad v. Railroad, 31 Kan. 660; Hannibal v. Winchell, 54 Mo. 172; Estes v. Owen, 90 Mo. 113; McCormick v. Patchin, 53 Mo. 33; Schenectady v. Trustees, 66 Hun. 179; Hannibal v. Railroad, 48 Mo. 480; Sturtevant v. Alton, 3 McLean, 393; Miller v. Milwaukee, 14 Wis. 642; Matthiessen v. Jersey City, 26 N. J. Eq. 247; State v. Morristown, 33 N. J. L. 57; Atty-Genl. v. Boston, 142 Mass. 200; Nagel v. Augusta, 5 Ga. 546; In re Burke, 62 N. Y. 229; In re Burmeister, 76 N. Y. 181; Morley v. Carpenter, 22 Mo. App. 640; Gurner v. Chicago, 40 Ills. 165; Howsmon v. Water Co., 119 Mo. 313; Gibson v. Owens, 115 Mo. 270; Scheuby v. Com., 36 Pa. St. 60; Farrar v. St. Louis, 80 Mo. 393; Schenectady v. Union College, 66 Hun. 179. (2) In fine, a maintenance clause is nothing more than a guaranty of good materials and workmanship. Kansas City v. Hanson, 58 Pa. 474; Robertson v. Omaha, 76 N. W. Rep. 442; Allen v. Davenport, 77 N. W. Rep. 532; Wilson v. Trenton, 40 Atl. Rep. 575; Cole v. People, 43 N. E. Rep. 607; Osborn v. Lyons, 104 Ia. 160; Rich v. Chicago, 152 Ill. 18. (3) The decision of this court in the Seaboard case was announced as its construction of an ordinance exactly the same in form as the ordinance here and of a contract like the contract here and the defenses made were exactly the same; in fact, counsel for respondents filed in support of the motion for rehearing in this case in the St. Louis Court of Appeals an affidavit which set up the fact that this case and the Seaboard case were founded upon similar ordinances and a sworn copy of each was attached thereto. The facts in this case are clearer and plainer than in Seaboard case and make

Barber Asphalt Pav. Co. v. Hezel.

a stronger case · in favor of plaintiff. It is submitted "*Interest reipublicae ut sit finis litium.*"

*Hiram J. Grover* and *Denis Devoy* for respondents.

(1) In view of the provisions of the Act of April 21, 1891, it is against public policy to allow any foreign corporation, which has not complied with the terms of that act, to make contracts, or to maintain in this court, or in any other court in Missouri, an action for the enforcement of any such contract, or for any other purpose whatsoever. Williams v. Scullin, 59 Mo. App. 30; Pierce Steam Heat. Co. v. Siegel Gas Fixture Co., 60 Mo. App. 148; Carson, Rand Co. v. Stern, 129 Mo. 381. (2) The judgment should be affirmed on the ground that ordinance No. 17151, and the contract, and the assessment, and the special tax bill are void, for the reason that they violate and are repugnant to the charter of the city of St. Louis. The charter does not use the word "maintenance." It always uses the word "repairs." Authority to contract for maintenance can be found, if at all, only under the provisions which authorize contracts for repairs. Maintenance for nine years, means repairs for nine years. Verdin v. St. Louis, 131 Mo. 87. (3) The doctrine that special taxation for local improvements on public streets must be based upon, and be limited by, the amount of the special benefits resulting to the abutting property, over and above the benefit which the public derives from the same improvements, always was correct in principle, and has now become part of the law of the land. Asberry v. Roanoke, 91 Va. 562; Detroit v. Chapin, 112 Mich. 588; Weed v. Boston, 42 L. R. A. 642; Violett's Heirs v. City Council, 23 S. E. Rep. 909; Hammett v. Philadelphia, 65 Pa. St. 146; State v. Newark, 37 N. J. L. 415; Norwood v. Baker, 172 U. S. 269; Hutcheson v. Storrie (Tex.), 51 S. W. Rep. 848; Fay v. Springfield, 94 Fed. Rep. 409; 2 Dillon Mun. Corps. (4 Ed.), p. 932, 936. (4) Legis-

lative enactments, charters and ordinances which formulate schemes of street improvement and which make no provisions for (1) ascertaining the benefit to the public and laying upon the public a charge proportioned to public benefit; (2) ascertaining the special peculiar benefit which the abutter receives over and above the benefit which the general public receives, and limiting the charge against him to such special peculiar benefit are null and void.    Legislative enactments, charters or ordinances can not pre-determine the fact in advance, by an unimpeachable fiat, that the abutter is and shall be at all future time specially benefited to the extent of the cost of the work, which may at any time in the future be done in front of his property.    Enactments, charters and ordinances which (as in the case at bar) thus precludes investigation and adjudication upon the fundamental essential fact of benefit are void. Norwood v. Baker, 112 U. S. 269; Hutcheson v. Storrie, 51 S. W. Rep. 848; Detroit v. Chapin, 112 Mich. 588.

BRACE, J.—This is an action to recover the amount of a special tax bill assessed by the proper authorities of the city of St. Louis against the property of defendants abutting on Jefferson avenue, in favor of the plaintiff, for work done in reconstructing and paving said avenue.    Upon a trial in the circuit court judgment was rendered for the defendants, and the plaintiff appealed to this court.    Upon a motion to dismiss the appeal for want of jurisdiction the case was transferred to the St. Louis Court of Appeals (138 Mo. 228), where the judgment of the circuit court was reversed, in pursuance of the opinion of a majority of that court (76 Mo. App. 135), delivered on the 21st of June, 1898, BIGGS, J., sitting therein (148 Mo. 625) dissenting, and in his dissenting opinion, deeming the decision rendered therein contrary to the previous decision of this court in Verdin v. St. Louis, 131 Mo. 26.    The case was certified here for final determination.

This is one of several suits pending on like tax bills.    The

litigation in regard to these tax bills was commenced in the St. Louis City Circuit Court, by the Verdin case, in July, 1893. That case was a proceeding in equity against the city of St. Louis, the board of public improvements, and the plaintiff in this case, to restrain the issuance and collection of these tax bills. The case went off in the circuit court upon a demurrer by the city to the bill, which was sustained by the circuit court, and the plaintiff appealed from the judgment on the demurrer, to this court, where the judgment of the circuit court was reversed, and the cause remanded to the circuit court, and upon the dismissal thereof in that court, suits were instituted upon the tax bills. The Verdin case was decided at the October term, 1895. The opinion of the majority of the court was delivered by BURGESS, J., who in the third paragraph thereof said:

"3. It is contended that section 542 of the Revised Ordinances of the city is repugnant to the letter and spirit of the provision of the charter of the city of St. Louis, and, therefore, null and void and of no effect, and that the action of the city in letting the contract for reconstruction and maintenance together is obnoxious and unlawful. Said section is as follows:

" 'Sec. 542. Whenever a street is to be improved, either on the motion of the board of public improvements or on petition of the adjoining property owners, the board of public improvements may submit to the municipal assembly a bill for letting in one contract the work of constructing or reconstructing such street and of maintaining it in good condition for a term of years; and after such bill has become a law the board of public improvements shall advertise for proposals, including the construction or reconstruction and maintenance under the same regulations as are provided for the improvement of streets; but the advertisement shall, in addition to what is prescribed for other street improvements, state the term during which the street is to be maintained in good condition and

the amount of bond which the contractor will be required to furnish to secure the execution of the contract for maintenance, in addition to the bond which under existing regulations has to be furnished for all contracts for street improvements. The letting of the work, the awarding of the contract and the approval of the contract and of the bonds shall be carried out as now provided for other street improvements. In canvassing the proposals, the lowest bid shall be ascertained by taking the aggregate amount of the cost of the construction or reconstruction, as the case may be, and the total cost of maintenance, for the term of years designated by the ordinance. The special tax bills against the adjoining property for the work of construction or reconstruction shall be issued whenever the work has been completed and accepted. The contract shall provide that the obligation of the contractor to maintain the streets in good condition shall commence one year after the completion and acceptance of the work of construction or reconstruction, and the contract price shall be paid semiannually out of the city treasury, on the certificate of the street commissioner that the work has been performed in accordance with the contract and specifications. The bond to be given to insure the maintenance of streets during the term agreed upon shall be $15 for every square (of one hundred superficial feet) of the street embraced in the contract. The contract shall provide that the contractor shall, whenever notified by the street commissioner that any repairs are required, at once make such repairs at his own expense, and if they are not made within proper time the street commissioner shall have power to cause such repairs to be made, and the cost thereof shall be paid out of the fund provided for the payment of contracts for street maintenance, and the amount shall be deducted from any money then due under the contract, or which may thereafter become due. And it shall further provide, that if at any time during the term for which the contract for the maintenance of the street is in force the

pavement of such street or any part thereof has deteriorated
to such an extent as to require in the opinion of the board of
public improvements, reconstruction, the street commissioner
may, with the approval of the board of public improvements
and of the mayor, notify the contractor that reconstruction is
necessary, and that the contractor shall, within three months
after receiving such notice, reconstruct the whole or such part
of the pavement with the same kind of material as heretofore
applied, or with some other material approved by the board of
public improvements. And the contract shall also provide
that if the contractor fails to reconstruct the street within
three months after having been notified, the board of public
improvements may, with the approval of the mayor, cancel
the contract and relet the work of reconstructing the pave-
ment, and that the cost of such reconstruction shall be paid by
the city and the amount collected by suit from the contractor
or his sureties, not to exceed $15 per square of pavement,
included in the contract. And the contract shall provide that
whenever any repairs of the street are made necessary from
the construction of sewers, the laying of pipes or telegraph
wires or from any other disturbance of the pavement by parties
acting under permits issued by the city, the contractor for the
maintenance of the street shall, on notification from the street
commissioner, immediately make all necessary repairs in con-
formity with the specification for this class of work. The
cost of all such repairs, exclusive of trenching and back-
filling, which shall be done by the parties who hold the permits
and in a manner as now required by existing ordinances,
shall be paid for at the full contract price for a superficial
square of new pavement out of the fund set apart for the pay-
ment of contracts for the maintenance of streets, and the
amount shall be certified by the street commissioner to the
auditor, who shall reimburse, by transfer, the aforesaid fund
from the funds of the proper department, if the repairs were
made necessary by the construction of any public improve-

ment; and out of the funds to be deposited by persons obtaining permits for opening streets before such permits are granted, if the repairs are made necessary by work done under such permits. And the contract shall further provide that the contract for the maintenance of such streets shall have the right to make all repairs which become necessary by the construction of any public improvement or by the work done by private parties under permits given by the city.'

"It is argued that the maintenance of Jefferson avenue for nine years amounts to nothing more than 'repairs' on the street for nine years, within the meaning of section 27, article 6, of the city charter; that it involves expenditures for labor and material, and is public work, within the meaning of the section; that it is a separate matter from reconstruction, and should have been let to contract separately and independently thereof; that ordinance 17151 for the maintenance and reconstruction of Jefferson avenue is null and void, because, as an ordinance for maintenance—being for the public work for the repair of Jefferson avenue for nine years—it should specify the material to be used in such repairs and an estimate of the cost of maintenance, as required by section 15, article 6, of the charter.

"By said section 27, article 6, it is provided that any public work, or repairs thereof, and to fix the price or rate thereof, shall be let out by the contract to the lowest responsible bidder, subject to the approval of the council, and any other mode of letting out work shall be null and void. Does the maintenance of Jefferson avenue for nine years, within the meaning of said section, mean, or amount, to repairs?

"It must be conceded that such work amounts to the expenditure of labor and money, and that it has no direct connection with the work of reconstruction. While it is the duty of the board of public improvements, in all cases, except in case of necessary repairs requiring prompt attention, to prepare and submit to the assembly estimates of costs of any

proposed work, and, under the direction of the ordinance, advertise for bids, and to let out such work by contract to the lowest responsible bidder, subject to the approval of the council, no such thing was ever done in this case. The costs and expenses attending the maintenance of streets are paid by the city out of the funds set apart annually for street repairs—reconstruction of streets. [Section 6, ordinance 17151.] The cost of repairs of all streets and highways, and cleaning the same, are also paid out of the general fund of the city. [Section 18, article 6, *supra.*]

"The word 'maintain' does not mean to provide or construct, but means to keep up; to keep from change; to preserve (Worcest. Dict.); to hold or keep in any particular state or condition; to keep up (Webst. Dict.).

"In Moon v. Durden, 2 Exch. 21, it was said: 'The verb "to maintain," . . . . . . . signifies to support what has already been brought into existence.' See, also, Railroad v. Godman, 4 N. E. Rep. (Ind.) 163.

" 'To repair' means to restore to a sound or good state after decay, injury, dilapidation or partial destruction. [Webster; Street Railway, etc., Co. v. Galveston, 69 Tex. loc. cit. 663. See, also, Railroad v. Pittsburg, 80 Pa. St. loc. cit. 76.]

"It will thus be seen that 'maintenance' and 'repair' when applied to a street practically mean one and the same thing. Maintenance, being a separate and distinct public work, must be contracted for like any other public work. The material with which it is to be done must be specified by the board, and an estimate of the cost should be sent to the municipal assembly, together with an ordinance recommending such repairs. Nothing of that kind was done in this case, but the bid for reconstruction and maintenance were both let together, at the same time and to the same party, with no estimate as to the cost of the latter, which could only be made, under the charter, after the repairs became necessary. There was no

legal obstacle in the way to one person becoming the contractor for both the reconstruction and maintenance, if under the city charter and ordinance the contract could be let to the lowest bidder, but in any event as the costs of reconstruction are assessed against the property holders, while the costs of maintenance are paid by the city, the lettings must necessarily have been separate, and upon different estimates.

"The board of public improvements of the defendant city had, previous to the time of letting the contract for reconstruction and maintenance to the Barber Asphalt Company, publicly announced as a rule for the conduct of said board that no bid for maintenance which should exceed fifty cents per square would be considered or recommended, which was estimated to be about cost, or less than cost, and by letting the contract for maintenance and reconstruction together the bidder was enabled to make a bid for such maintenance at about costs, and thereby protect himself against any possible loss on account of his contract for maintenance by bidding a higher price for reconstruction.

"Under section 18, article 6, *supra*, the paving, curbing, guttering, sidewalks, and the materials for the roadways, the repairs of alleys and sidewalks, are charged upon the adjoining property as a special tax, while the cost of their maintenance is paid by the city, and there is no apparent reason why this work could not be done as well by one contractor as another. But by letting to the defendant, the Barber Asphalt Paving Company, the contract for reconstruction, and at the same time, and as part of the same contract, the contract for the maintenance of Jefferson avenue for the period of nine years at the price of $1,962, the contractor was enabled to obtain from the property holders, in advance, payment in whole or in part for the maintenance which, under the charter, is required to be paid by the city; and if, after the work of reconstruction is completed, the property holders refuse to pay at once, a special tax bill is immediately issued, which is

·a lien upon the property for the cost of the work of maintenance, which has not been done, and which the contractor may never do.

"People ex rel. v. Maher, 56 Hun. 81, was upon objections filed to the letting of a contract to the National Vulcanite Company for the grading and paving a street in the city of Albany, New York, with Trinidad sheet asphalt. The contract was objected to because of the fact that it contained a provision which required the contractor to keep in repair the pavement, laid in pursuance of the provision thereof, for the period of seven years, from and after the acceptance by the city, without expense to said city or to the abutting property owners. It was held (we quote from the syllabi), 'that the necessary effect of this contract was to charge upon the property owners the cost of keeping the avenue in repair for seven years, in violation of the provision of the act of the legislature which charged such expense upon the city at large. That anything in the contract which imposed upon the property owners more than the original obligation of having the pavement well constructed in the outset, was unjust to them.'

"In the case in hand, by letting the reconstruction, and maintenance of the street together, plaintiffs were compelled to pay part of the expense of maintenance, while by law they were only responsible, if at all, for the expense of reconstruction.

"Moreover, ordinance number 17151 provides for the reconstruction of Jefferson avenue, by taking up and removing the old pavement of the roadway, preparing the roadbed, renewing and readjusting the curbing, laying a roadway pavement of best quality of Trinidad lake asphalt on a concrete base, except between the rails of the street railway occupying the street, which last mentioned space was to be paved with granite blocks, laid on a bed of sand, the curbing to be of limestone; while ordinance number 542 provides for the letting of such work all in one

contract, which is in direct conflict with section 27, *supra*, of the charter which provides for the letting of such contracts to the lowest bidder, as provided for purchases by the commissioner of supplies, while by section 29, article 4, of the charter it is provided that: 'In advertising for proposals to furnish supplies, quantity and quality of all articles shall be fully stated, and any bidder may bid for any one article named.'

"The notice of the letting of the contract said nothing as to the different kinds of work to be done, or materials to be furnished in reconstruction, although estimates for such work and materials were properly made, but simply gave notice that the board of public improvements would hold a special meeting, at a time fixed, at its office in the city hall, for the purpose of considering the matter of reconstructing with asphaltum Jefferson avenue and other streets. As to work and material, other than asphaltum, there was no notice at all, and even if there had been no one could have bid on any part or parcel thereof, because of the fact that the ordinance provides for the reconstruction with Trinidad lake asphalt, a monopolized article, in one contract, which not only prevented competition in bidding as to that part of the contract, but for any other work or materials also.

"No part of the cost of maintenance of the street could be imposed upon the plaintiffs, in the absence of express authority under the charter to do so. We, therefore, conclude that section 542 of the Revised Ordinances of the defendant city is in conflict with, and contrary to, the meaning and spirit of the city charter and null and void.

"Nor do we think the fact that the contractor is required to give bond for the maintenance of the streets legalizes the contract. Here the contract for reconstructing the street, and the maintenance of it after construction, were entirely different matters, having no immediate or necessary connection whatever with each other.

"Moreover, ordinance 17151, which provides for the re-

construction and maintenance of Jefferson avenue, being for public work, should have specified the material to be used in such maintenance as required by section 15, article 6, of the charter, and, as it failed to do so, is also null and void."

GANTT and MACFARLANE, JJ., concurred in so much of that paragraph "as holds the ordinances in question requiring contracts for reconstruction and maintenance to be let in one contract as stated in the petition, to be in violation of the charter of the city and void," and in the result, as did BARCLAY, J., who, in a separate opinion said:

"2.    The scheme of procedure adopted by the board of public improvements under ordinance 542 (R. O., St. Louis, 1887), in respect of reconstruction and maintenance of the proposed streets is illegal, because the plain effect and obvious intent of the scheme are to put on the owner of the real property (properly chargeable by special tax with the cost of reconstruction) a portion of the expense of repairs of the improved street for a long term of years.    The latter expense the city is bound by the charter to bear, and can not shuffle off upon the adjacent property in the mode attempted by the scheme referred to, as described in the petition in this suit.

"3.    'Maintenance' is a word whose meaning is greatly influenced by its context.    As used in the ordinance (542) before the court, it appears to me to include the idea of putting on the repairs needed to maintain the street in its completed condition.    The city can not lawfully cast upon the adjacent property (under the guise of reconstruction) a part of the burden of repairs, which the charter requires the city to bear.    By calling that burden 'maintenance' the nature of the work is not changed, nor is the liability of the property owner under the charter enlarged.

"4.    The two charges for reconstruction and maintenance have been so blended (by the scheme of special taxation adopted in the case before the court) that the valid charge for reconstruction can not be definitely ascertained and severed

from the invalid charge for repairs sought to be thrown upon the adjacent property. Some part of the expense properly chargeable to the city for repairs is embodied in the special tax laid upon plaintiff's property for alleged reconstruction of the street. That is the effect (and obviously the intended effect) of the scheme originating in ordinance 542, as worked out by the board of public improvements, according to the account given of it by the petition. Hence the assessment for reconstruction (as now made) can not be enforced, containing, as it does, an unascertained and uncertain illegal element."

From the opinion of the majority and their decision, SHERWOOD and ROBINSON, JJ., and BRACE, C. J., dissented, their reasons for such dissent being expressed in an exhaustive opinion by SHERWOOD, J., 131 Mo. 103, et seq.

Afterwards at the October term, 1896, the case of The Barber Asphalt Co. v. Ullman, 137 Mo. 543, was decided, the plaintiff in that suit and in the one in hand being the same. That suit was an action upon a special tax bill, issued in regular form by the authorities of the city of St. Joseph, in favor of the plaintiff against an abutting property owner, for the improvement of one of its streets under a contract, made in pursuance of an ordinance in which the plaintiff guaranteed the pavement for five years, and agreed "to keep the same in repair during the period of said guarantee," and although the charter required that "the cost of repairing and keeping in repair the paving and macadamizing of all streets and avenues shall be paid out of the general revenue of the city," the contract was sustained and the tax bill upheld. The opinion in that case was written by BARCLAY, J., and concurred in by SHERWOOD, MACFARLANE, and ROBINSON, JJ., and by BRACE, C. J.

In the opinion, the learned judge distinguished the case from the Verdin case, but as GANTT and BURGESS, JJ., could not "perceive the distinction in principle," they dissented and

expressed their views in a dissenting opinion written by GANTT, J., 137 Mo. 572, et seq.

In the meantime one of the suits upon the St. Louis tax bill having been tried and judgment thereon rendered in the circuit court in favor of the defendants, the plaintiff appealed to the St. Louis Court of Appeals, where the judgment of the circuit court was at first affirmed on the authority of the Verdin case, but afterwards on motion for rehearing was certified to this court on account of a supposed conflict between the decision in that case, and the later decision in the Ullman case. In due course, the case came on for hearing in this court, and was decided at the October term, 1898. [Seaboard National Bank, Assignee, v. Woesten et al., 147 Mo. 467.] The tax bills upon which that suit was brought were issued under an ordinance drawn in the same language and under a contract let under the same circumstances and conditions as the tax bill sued on in this case; about the only difference between the two cases being in the names and amounts; and that the Seaboard tax bill was for paving on Grand avenue, and the Hezel tax bill for paving on Jefferson avenue. The opinion in the Seaboard case was written by MACFARLANE, J., and after mature consideration was concurred in by SHERWOOD, ROBINSON, BRACE and WILLIAMS, JJ., and dissented from by GANTT, C. J., and BURGESS, J. In the opinion, the Verdin and Ullman cases were reviewed, and the Seaboard case distinguished from them. Whatever may be thought of these distinctions, the conclusions therein reached, and the reasoning upon which it rests, meets with our approval. And as the case in hand can not be distinguished from that case, but is on all fours with it, presenting the same facts for judgment that passed into judgment under the opinion in that case, and as the argument on the question has been exhausted in that and the foregoing cases, we are content to sustain the contract and uphold the tax bill herein, upon the authority of that case; holding in this, as in that case, that the ordinance and contract were not in

violation of any of the provisions of the city charter, and that the special tax bill sued on is a legal charge against the property of the defendant.

It follows that the judgment of the circuit court should be reversed and the cause remanded to that court with directions to enter up judgment in favor of the plaintiff, in accordance with the views expressed in this opinion. It is accordingly so ordered. *Sherwood, Robinson, Marshall* and *Valliant, JJ.*, concur; *Gantt, C. J.*, and *Burgess, J.*, dissent.