## T. B. EDGINGTON *v.* CITY OF MEMPHIS.*

## (*Jackson.*   April Term, 1925.)

1. **MUNICIPAL CORPORATIONS.** City of Memphis held entitled to assess owners of adjoining properties for repaving street.

Under (Priv. Acts 1909, chapter 109, amending Priv. Acts 1907, chapter 341, providing for the paving, etc., of any street, highway, or alley, the city of Memphis may repave any such street where necessary, and assess the charge thereof against owners of adjoining properties; there being no provision in its charter, or in the statutes, restraining such work.   (*Post, p.* 160.)

Acts cited and construed: Acts 1907, ch. 341; Acts 1909, ch. 109.

Cases cited and approved: Lux, etc., Stone Co. v. Donaldson, 162 Ind., 481; Yeakel v. LaFayette, 48 Ind., 116; Broadway Baptist Church v. McAtee, 8 Bush., 508; Sheley v. Detroit, 45 Mich., 431; State v. Ramsey County Dist. Co., 80 Minn., 293; Barber Asphalt Paving Co. v. Hezel, 155 Mo., 391; Robertson v. Omaha, 55 Neb., 718; Jelliff v. Newark, 49 N. J. Law, 239; People v. Buffalo, 52 App. Div., 157; Adams v. Beloit, 105 Wis., 363.

2. **APPEAL AND ERROR.** Assignments of error could not be raised on appeal for the first time.

Assignments of error not raised in complainant's bill, nor in the lower court, could not be raised on appeal for the first time in the supreme court.   (*Post, p.* 160.)

3. **MUNICIPAL CORPORATIONS.** City of Memphis held authorized to sell property for delinquent assessment for repaving street.

The city of Memphis *held* authorized to sell property for delinquent assessment, levied for cost of repaving street, under Priv. Acts 1909,

Edgington v. City of Memphis.

chapter 109, amending Priv. Acts 1907, chapter 341, in view of section 12 of the act of 1907. (*Post, p.* 160.)

Acts cited and construed: Acts 1907, ch. 341, sec. 12.

4. **MUNICIPAL CORPORATIONS.** Chancery court held not without jurisdiction to entertain bill to enjoin assessment.

Allegation that chancery court was without jurisdiction to entertain bill to enjoin assessment for repaving street, under Private Acts 1909, chapter 109, amending Private Acts 1907, chapter 341, was not well taken; there being no question as to the right of a property owner to bring a bill to enjoin an illegal or void assessment of his property. (*Post, pp.* 160, 161.)

Case cited and approved: Arnold v. Knoxville, 115 Tenn., 201.

---

*Headnotes 1. Municipal Corporations, 28 Cyc., pp. 1111, 1112; 2. Appeal and Error, 3 C. J., Section 580; 3. Municipal Corporations, 28 Cyc., p. 1225; 4. Municipal Corporations, 28 Cyc., p. 1185.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. F. H. Heiskell, Chancellor.

Edgington & Edgington, for appellant.

E. B. Klewer, City Attorney, R. I. Moore and C. P. J. Mooney, Jr., for appellee.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by T. B. Edgington to enjoin the city of Memphis from selling a certain lot

fronting on the north side of Beale avenue between South Main street and South Front street, owned by him, against which a second front foot assessment had been levied in 1921, and which was past due and delinquent. The city had advertised the property to be sold for this front foot assessment.

Upon a hearing before the chancellor the bill was dis- missed and complainant appealed to the court of civil appeals. That court affirmed the decree of the chancellor, and the cause is now before this court on complainant's petition for writ of *certiorari,* and for review.

The authority of the city of Memphis to levy special assessments for street improvement is conferred by chapter 341 of the Private Acts of 1907. Section 1 of this act provided that in all municipalities of this State having a population of one hundred thousand inhabitants according to the federal census of 1900, or any subsequent federal census, it should be lawful for the legislative bodies of such municipalities upon petition signed by the owner or owners of sixty per cent. of the frontage of the lots or parcels of land abutting on such portion of any street, highway, or alley as set out in the petition within the corporate limits of such municipalities, to pro vide by ordinance for the improvement of such street, highway, or alley by opening, widening, extending, grading, curbing, guttering, and paving, and to provide by ordinance for the improvement of such street, highway, or alley by opening, widening, extending, grading, curbing, guttering, and paving, and to provide for making special levies or assessments upon the lands abutting on such street, highway, or alley to be improved in the man-

ner thereinafter set out in other sections of the act, to pay for such improvement.

Chapter 341 of the Acts of 1907 was amended by chapter 109 of the Private Acts of 1909, so as to provide that in all municipalities of this State having a population of not less than one hundred thousand inhabitants according to the federal census of 1900, or any subsequent federal census, it should be lawful for the legislative bodies of such municipalities to provide by ordinance for opening, extending, widening, grading, paving, macadamizing, curbing, guttering, or otherwise improving in such manner and with such materials and with such culverts as such legislative bodies may determine, and to provide for making special levies or assessments upon the land abutting on such street, highway, or alley, or part, or parts thereof to be improved, in the manner thereinafter set forth in said act, to pay two-thirds of the cost of such improvement.

The substance of the change made in the act of 1907 by the act of 1909, was to relieve the city of the necessity of first securing or having a petition signed by sixty per cent. of the frontage of the lots or parcels of land abutting on the street to be improved.

By Improvement Ordinance No. 224 passed by the board of commissioners of the city of Memphis pursuant to the statutes hereinbefore referred to, providing for the paving of Beale avenue from South Main street west to the Illinois Central Railroad right of way, with second-class granite blocks laid on a gravel foundation. This ordinance was confirmed on September 27, 1910, and pursuant to its provisions Beale avenue was paved with granite blocks, and complainant's property was as-

sessed, for said improvement, with $93.55 which complainant paid on August 5, 1912.

It appears that this pavement became worn, dilapidated, and unsuited to the needs of the public, whereupon the board of commissioners of the city passed Improvement Ordinance No. 381, providing for the repairing, grading, draining, curbing, and paving with asphalt pavement on concrete foundation of Beale avenue from the east property line of South Front street to the west curb line of South Fourth street. This ordinance was passed on final reading August 5, 1919.

A notice to property owners was thereupon published in the Memphis Press, a daily newspaper of general circulation in the city of Memphis, advising property owners of the passage of the ordinance, the nature of the proposed improvement, and the estimated cost thereof, and notifying all interested property owners that the board of commissioners would hear remonstrances and protests against the construction of the improvement on August 19, 1919, at 2:30 o'clock p. m.

Complainant testified that no personal notice of the passage of the ordinance, or the making of the proposed improvement was served upon him; but the undisputed evidence is that the notice by publication was regular and in accordance with the provisions of chapter 341 of the Acts of 1907, and acts amendatory thereof, constituting the Front Foot Assessment Law.

No protests having been filed by any property owner affected, the ordinance was confirmed August 19, 1919; and the work provided for was completed according to the terms of the ordinance, and on April 27, 1921, a notice to property owners was published in the Memphis

Press, advising them that the book of assessments had been made up, and was open for public inspection, and would so remain until May 10, 1921, at which time the board of commissioners would meet to hear and determine any objections or defense which might be offered to the assessment.

No one appeared to contest the assessment and it was confirmed May 10, 1921.

Thereafter, on or about April 20, 1922, almost a year after the assessment had become final, complainant filed a petition with the board of commissioners, stating that the city treasurer had on April 18, 1922, given him notice that the assessment on his Beale street lot was delinquent, and setting up in his petition that he had been assessed on the basis of a frontage of fifty feet, whereas he had only a frontage of forty-three feet; also setting up that he had no actual notice of the assessment prior to the notice from the city treasurer, and claiming that the city was without authority to assess his property twice, and asking that the entire second front foot assessment be remitted, and the tax against his property canceled.

At a hearing on this petition June 13, 1922, notwithstanding the assessment had become final, upon a showing that complainant only had a frontage of forty-three feet instead of fifty feet, the board of commissioners reduced his assessment from $252.53 to $217.18, waived penalties, but insisted on interest on the amount of taxes due. Thereafter, on June 1, 1923, more than two years after the assessment become final, the present bill was filed.

It is first insisted by complainant that chapter 341 of the Private Acts of 1907, and the amendatory acts thereof, conferred on the city of Memphis the right to make but one special assessment, upon complainant's property for street improvement, and that the second assessment made under Ordinance No. 381 is void, and should have been so adjudged by the chancellor.

It is also insisted by complainant that the city of Memphis having levied one special assessment against his property in one special assessment district, which special assessment had been paid in full, could not afterwards incorporate the same property in another special assessment district, and again assess it for another improvement, without notice to him, and giving him an opportunity to have his day in court and to defend against such transfer, or protect the rights which he had acquired in the first assessment district in which his property had been originally incorporated and assessed.

It will be noted that the limits of the two improvement districts established by the ordinances of 1910 and 1919, respectively, were not coextensive. Under the first, ordinance the eastern limit of the improvement was South Main street, the western, the right of way of the Illinois Central Railroad Company, which was west of the east line of South Front street. Under the second ordinance the eastern limit of the improvement district was the west line of South Fourth street, which was east of the west line of South Main street by three blocks, while the western limit was the east line of South Front street, which is the first street west of South Main street.

It also appears from a preponderance of the evidence that the old pavement, the cobblestone pavement, had

become so worn and dilapidated as to render the new pavement necessary.

In 25 R. C. L., p. 103, section 18, it is said: "A special assessment may be levied to pay for reconstruction, such as regarding or repaving a public street. This is based on the theory that the power to grade and improve streets is a legislative power, and is a continuing one, unless specially restricted. It may be exercised from time to time as the needs of the corporation may require, and of the necessity and expediency of its exercise the corporate authority and not the court is usually to judge, and therefore it follows that the power to compel property owners to pave streets adjoining their lots, or the power of paving at the property owners' expense, once exercised, is not exhausted; but such owners may be compelled to repave or to pay for repavement when required by municipal authorities."

In 28 Cyc., 1111, it is said: "Acting under the general power to improve its streets by special assessment, a city may, unless restrained by the provisions of its charter or by statute, order the reimprovement or repavement of a street; and, except for gross abuse, its discretion in so doing may not be reviewed by the courts."

To the same effect is the rule announced in *Lux, etc., Stone Co.* v. *Donaldson,* 162 Ind., 481, 68 N. E., 1014; *Yeakel* v. *LaFayette,* 48 Ind., 116; *Broadway Baptist Church* v. *McAtee,* 8 Bush (Ky.), 508, 8 Am. Rep., 480; *Sheley* v. *Detroit,* 45 Mich., 431, 8 N. W., 52; *State* v. *Ramsey County Dist. Ct.,* 80 Minn., 293, 83 N. W., 183; *Barber Asphalt Paving Co.* v. *Hazel,* 155 Mo., 391, 56 S. W., 449, 48 L. R. A., 285; *Robertson* v. *Omaha,* 55 Neb., 718, 76 N. W., 442, 44 L. R. A., 534; *Jelliff* v. *Newark,* 49

N. J. Law, 239, 12 A., 770; *People* v. *Buffalo,* 52 App. Div., 157, 65 N. Y. S., 163; *Adams* v. *Beloit,* 105 Wis., 363, 81 N. W., 869, 47 L. R. A., 441.

There being no provision in the charter of the city of Memphis, or in the statute, restraining it from reimprov- or repaving Beale street, we are clearly of the opinion, in view of the foregoing authorities, that the city had the authority to repave said street; it appearing that such repavement was necessary, due to the worn and dilapidated condition of the old pavement.

Complainant through his fourth and sixth assignments of error insists that the court of civil appeals erred in not holding that the city was without authority to advertise and sell complainant's property to satisfy said delinquent assessment under said ordinance. The question presented by these assignments of error was not raised in complainant's bill, nor in the lower court. It could not therefore be raised on appeal for the first time. However, it is provided by section 12 of chapter 341 of the Acts of 1907, that the legislative body of the city shall have authority to sell all property against which an assessment has been levied at any time after said assessment shall have become due to satisfy the same, together with all costs, and such sale shall be governed as to notice, terms, costs, and in all other respects, except as to the time of sale, by the laws and ordinances of such municipality now in force or which may hereinafter be enacted providing for the sale of real estate for city taxes.

The insistence of the city that the chancery court was without jurisdiction to entertain complainant's bill to enjoin said assessment, though the bill alleged that un-

der the statute the city was without authority to pass the ordinance assessing complainant's property, and that said assessment was void, because complainant's remedy at law was adequate, is not well taken.    There is no question as to the right of a property owner to bring a bill to enjoin an illegal and void assessment of his property. *Arnold* v. *Knoxville,* 115 Tenn., 201, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881; 25 R. C. L., p. 192, section 105.

We find no error in the judgment of the court of civil appeals, and it is affirmed, with costs.