ETHRIDGE, Chief Justice:
Alberta Gardner, plaintiff-appellant, filed this suit in the Circuit Court of Washington County against Otis Elevator Company (called Otis), appellee, and the individual owners of the Leyser Building, claiming damages for personal injuries allegedly caused by the negligence of the defendant. The owners obtained before trial a covenant not to sue from plaintiff for the sum of $4,250. The case proceeded against Otis, and the jury rendered a verdict for plaintiff, but the circuit court sustained defendant’s motion for a judgment notwithstanding the verdict, and entered judgment for Otis. We affirm.
*811 Alberta Gardner had worked for two years for the owners of the Leyser Building, operating a manual elevator during office hours, and cleaning offices located on the second floor of the building afterwards. The building is a two-story structure, with most of the first floor occupied by a retail store. There is a corridor entrance which opens into a small lobby, consisting of a stairway and an elevator leading to the second floor, occupied by offices.
The elevator has a wire-mesh, collapsible door, which travels with the elevator. There is a steel door, affixed to the wall on the first and second floors, leading into the elevator shaft. The sliding door on the first floor differs from that on the second in one respect, the first floor door has a hole in the door into which a “key” fits to depress the lever on the inside, permitting it to be opened from the outside. The fixed door on the second floor has no such key hole and cannot be opened from the exterior.
The elevator was sold and installed by Otis thirty years ago, and was owned by the owners of the building. Otis did repair work on it on an open-order basis, with each specific repair order constituting a separate agreement between the parties. The repairman for Otis was Glenn Stewart. For a number of years Stewart had done all of his work on the elevator during the working hours of the week, and had not been there after hours. However, on the occasion in question, at the request of the building owners, Stewart came to repair the elevator on Saturday around one P.M., after plaintiff had completed her elevator duties for the day. She was expecting him, and the elevator car was on the second floor with the doors open at the time Stewart arrived. He entered by walking up the outside stairs to the back door, which opened onto the second floor.
Plaintiff gave a set of keys to Stewart. She left the elevator on the second floor with the doors open, and the first floor doors locked. She gave no instructions to Stewart as to where she wanted him to leave the elevator when he finished repairing it. She testified that she knew the elevator repairman would go out the back door when he finished, because she had locked the downstairs front door. Further, Stewart did not know where the elevator was customarily left overnight or over the weekend, at the time he finished the repairs.
Stewart completed his work around five P.M. There is no claim that it was inadequate. After testing the elevator, he left the car on the second floor where plaintiff had turned it over to him, with the door ' open. He loaded up his equipment and went out the back door on the second floor. Stewart drove to the residence of Mrs. Weinberg, one of the owners of the building, and left the keys and a time ticket with her. He advised her that he had left the elevator on the second floor with the door open, and that he did not know where they usually left it parked on the weekend. Arthur Jackson, Mrs. Weinberg’s maintenance man, who was present, stated that it was left on the bottom floor with the door shut. Stewart told Mrs. Weinberg that, if she would return to him the keys, he would go back to the building and run the elevator downstairs, but she told him not to do so, that she would see that the car was returned to the first floor. Mrs. Weinberg substantially confirmed Stewart’s version of this conversation. Thereafter Stewart left and returned to Jackson. Neither Jackson nor Mrs. Weinberg moved the elevator back to the first floor that weekend.
On the following Monday morning, around eight o’clock, plaintiff entered the building for work, by unlocking the front door. The lobby was rather dark, with a single fluorescent light on the right side of the elevator shaft near the stairs. There were some windows next to the front door. In order to turn on the light in the car, it is necessary to step into it. Plaintiff went to the elevator and unlocked the sliding *812 steel door, stepped forward to turn on the light and fell several feet into the open shaft.
Plaintiff testified that she customarily left the elevator on the first floor, with the outside door closed, but did not shut the collapsible door on the elevator. When she entered the lobby, only the light on the stairway was burning. She opened the sliding steel door with her key, not all the way, but just enough to step inside the elevator. She said that she looked when she opened the door, but saw “dark, nothing but dark * * * I didn’t see anything but the pit when I fell over into it.” She did not see the tile floor of the elevator with its different colors, the stool in the elevator, or anything but the pit. She admitted she knew the repairman had worked on the elevator the preceding Saturday, she did not know where the elevator had been left, she gave him no instructions where to leave it, and she knew that when he finished he would go out the back door from the second floor.
Under these circumstances, we do not think that Stewart, Otis’s repairman, breached any duty which he owed to plaintiff. His acts did not constitute negligence. The elevator was properly repaired. He left the elecator, with the doors open on the second floor, at the same place where plaintiff delivered it to him. Both plaintiff and Stewart understood that he would go out the back door from the second floor. The steel door on the first floor was locked. Stewart created no trap or hazard, and, when he left the building, he had acted as a reasonably prudent person.
When Stewart went to Mrs. Weinberg’s home, and gave her the key and ticket, he ascertained that on weekends the elevator was customarily left on the first floor, but the owner told him not to go back to the building, that her man would move the elevator down. At this point what would a reasonably prudent man have done ? Stewart had properly repaired the elevator, and left it with the doors open on the second floor, at the same place plaintiff had turned it over to him. The downstairs steel door was locked. Plaintiff knew that he would leave by the upstairs door. In this situation, we think Stewart acted reasonably, and had no additional duty to plaintiff. We can find no element of negligence in his actions.
Further, when he turned the keys over to Mrs. Weinberg and she told him not to return to the building to move the elevator, that her man would do it, Stewart reasonably could not be expected to have insisted, against the owner’s wishes, upon going back. At that point, the contractee, Mrs. Weinberg, terminated the independent-contractor relationship with Otis and its servant Stewart. They had been hired only for the particular repair job. 57 C.J.S. Master and Servant § 593 (1948). However, since Stewart did not breach any duty toward plaintiff, there is no issue as to whether any assumed duty to plaintiff was delegable or non-delegable. However, assuming arguendo that, when Stewart returned the keys to Mrs. Weinberg, he still owed plaintiff a duty, it ended when Mrs. Weinberg terminated the independent-contractor relation, and told him not to return to the building, that she would move the elevator. Stewart’s cross-examination concerning his thoughts about the¡ location of the elevator, after the facts, does not affect the result. The undisputed facts reflect that, when he turned over to Mrs. Weinberg the keys to the building, and she assured him that she would see that the elevator was brought to the first floor, the contractual relationship between Otis and Stewart, and the owners of the building terminated, and along with it Stewart’s duty under this assumption with reference to location of the elevator.
A somewhat similar case is Newey v. Kinwood Realty Corp., 277 App.Div. 682, *813 102 N.Y.S.2d 679 (1951). Plaintiff was injured when he fell into an elevator shaft in an office building owned by defendant, Kinwood Realty Corporation. The elevator had been removed from the bottom floor, its customary resting place, by employees of the telephone company, who had taken the car to transport themselves and their equipment to another floor, where they were doing work for a tenant of the building. Plaintiff sued both the owner of the building and the telephone company.
Before the accident plaintiff and the building superintendent had been working nights and Sundays moving partitions for another tenant, and on that Sunday afternoon they met to continue their work. The elevator they chose was the one on which they had come down the night before and left at the lobby floor. The superintendent got a key to the elevator door, unlocked it, and upon opening the door plaintiff stepped into the unlighted shaft and sustained injuries. The court found negligence on the part of the building owners who employed the superintendent, but reversed the judgment against the telephone company, and said:
The situation is entirely different as to the defendant Telephone Company. * * * Their (employees’) acts did not constitute negligence. Their conduct was not contrary to that of a reasonably prudent and careful person under the same circumstances. They created no trap or hazard. They left the illumination as they found it. They left the door to the shaft closed and locked. 102 N.Y.S.2d at 682-683.
See also Wolfmeyer v. Otis Elevator Co., 262 S.W.2d 18 (Mo.1953); Pfingst v. Mayer, 93 Cal.App.2d 265, 208 P.2d 1002 (1949); Annot., 34 A.L.R.2d 1366 (1954). Cf. Selby v. McWilliams Realty Corporation, 246 Miss. 568, 151 So.2d 596 (1963).
Affirmed.
All Justices concur.